# Exhibit A-13

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| STATE OF NEW YORK, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 25-10601-MJJ |
| LINDA MCMAHON, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | | |
| _____ | ) | |
| SOMERVILLE PUBLIC SCHOOLS, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 25-10677-MJJ |
| | ) | |
| DONALD J. TRUMP, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**DECLARATION OF RACHEL OGLESBY**

1. My name is Rachel Oglesby. I make this Declaration based on my own personal knowledge, on information contained in the records of the Department of Education, or on information provided to me by Department of Education employees.

2. I am currently employed as Chief of Staff for the U.S. Department of Education, headquartered in Washington, D.C. I began my service at the Department on January 20, 2025.

3. Before joining the Department, I worked at America First Policy Institute as the Chief State Action Officer and Director of the Center for the American Worker.

4. In my role at the Department, I have the following responsibilities:
   - I assist the Secretary of Education with all her responsibilities running the Department.
   - I advise the Secretary on significant matters within and affecting the Department.

5. I submitted a declaration in this matter on June 3, 2025, describing the Department's compliance activities with regard to the preliminary injunction issued by this Court on May 22, 2025 (the "Preliminary Injunction"), and I incorporate herein by reference the statements made in my previous declaration.

6. The ad-hoc committee described in my June 3, 2025, declaration, met again on June 5, 2025, to coordinate Preliminary Injunction compliance actions. The Department took numerous actions to further the complex process of reintegrating approximately 1,400 employees into the workforce. It is an operational project not dissimilar to "standing up" an entire agency with regard to the logistical complexities of, for example: arranging for facilities for physical workspace; updating, reactivating, and re-issuing government furnished equipment (GFE) (for which contracts supporting software must be rescoped to provide for the additional number of employees); providing for security access (including building entry, parking, transit passes, and PIV card updates); preparing and updating position descriptions; and ensuring that all actions comply with collective bargaining requirements.

7. By June 10, 2025, the Department had:

   - Issued a formal communication (by email to personal email addresses for employees who do not have access yet to their GFE) on June 6, 2025 to all employees who had received RIF notices on March 11, 2025, advising them that they will not be separated on June 10 and affirming the agency's commitment to fully reintegrate them into the workforce. A true and correct copy of that communication to employees is attached hereto as Exhibit A.
   - Sent a follow-up email on June 9, 2025, to all employees who had received RIF notices on March 11, 2025, with information for employees about the impact on reintegration back into ED on retirement.

- Contacted the Department's Employee Assistance Program (EAP) to support employee reorientation and reintegration. The Department is currently awaiting a cost estimate and scheduling availability.
- Initiated outreach to the Department of Homeland Security (DHS) to conduct structured safety and security training sessions for returning employees. The Department is awaiting confirmation of dates.
- Identified the information technology (IT) contracts that the Department must renegotiate to restore technical services for returning employees.
- Communicated to the agency union that previously-filed union grievances challenging the RIF would not be determined by the Department due to the Preliminary Injunction.
- Formulated a reintegration plan (which the Department is working to finalize) to return employees in phases to minimize disruption and ensure a smooth operational transition.

8. In addition to the steps above, the Department is arranging for the following additional actions to support a successful reintegration:
    - Conducting individual check-ins with each impacted employee to assess needs.
    - Hosting a reorientation to the Department to communicate expectations, timelines, and available support services.
    - Revalidating position assignments to ensure returning employees are appropriately aligned with current operational needs.
    - Auditing HR and payroll systems to ensure accuracy in personnel records and timecards.
    - Considering modifications to remote-work policies including analyzing how such policies might apply to returning employees as well as current active duty employees and the need for collective bargaining agreement compliance and general fairness to all employees.
    - Issuing guidance to supervisors to aid in supporting returning staff and maintaining team cohesion.

9. In compliance with the Preliminary Injunction, the Department continues to pause implementing significant interagency agreements, preventing the Department (and other agencies) from pursuing operational efficiencies and cost-savings. For example, on May 21, 2025 the Department executed an interagency agreement with the Department of Labor regarding administration of certain career, technical, and adult education grants, a copy of which is attached here as Exhibit B. Similarly, the Department had been negotiating a memorandum of understanding with the Treasury Department regarding student loan management and the Department has paused this action pursuant to the Preliminary Injunction.[1]

---

[1] The Department finalized an agreement with the Treasury Department on April 8, 2025, under which nine Department employees were, and currently are, detailed to Treasury. A true and copy of that agreement is attached hereto as Exhibit C. The Department does not view the Preliminary Injunction as requiring the Department to disrupt the status of those nine detailees, as none were subject to the Department's March 11, 2025 RIF notice.

\*\*\*

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Washington, DC this 10th day of June.

_Rachel Oglesby_

Rachel Oglesby

# EXHIBIT A

**From:** CHCO-Info <workforcereshaping@ed.gov>
**Sent:** Friday, June 6, 2025 2:12 PM
**To:** RIF@listserv.ed.gov
**Subject:** Update: RIF Status

Colleagues,

I wanted to provide an update to the Official Reduction in Force notice you previously received. Considering the recent injunction in *State of New York v. McMahon (1:25-cv-10601)*, you will not be separated on June 10, 2025. We are actively assessing how to reintegrate you back to the office in the most seamless way possible. This includes evaluating necessary updates to security access, technology, and workspaces to ensure full operability.

As part of our reintegration planning, we are asking all impacted employees to voluntarily share any information regarding current outside employment or offers they may have accepted since the RIF notification. This information will assist us in understanding potential reentry timelines and identifying any accommodations that may be needed. We understand that circumstances may have changed during this period, and this request is made solely to support a smooth and informed return to duty. Please note this information does not affect your employment status. Please click the following link to complete the form found here: Outside Employment.

Your continued patience is appreciated. You will receive further updates as soon as possible.

Jacqueline Clay

Chief Human Capital Officer

# EXHIBIT B

CONTROLLED UNCLASSIFIED INFORMATION



**Interagency Agreement
Between the
U.S. Department of Education
and
U.S. Department of Labor**

Pursuant to 20 U.S.C. § 1231(a) and 31 U.S.C. § 1501 and § 1535, this Interagency Agreement (IAA or Agreement) is entered into between the U.S. Department of Education (ED) and the U.S. Department of Labor (DOL), who hereby agree as follows:

## 1.  <u>PURPOSE/SCOPE</u>

The signatory agencies (Parties) enter into this Interagency Agreement to affirm their common commitment to furthering and improving career, technical, and adult education in the United States. The Parties together commit to utilizing available statutory authorities to promote innovation and process improvements in pursuit of better employment and earnings outcomes for program participants, by establishing a partnership that (1) enables administrative reforms to agency policies and programmatic requirements; (2) provides process improvements to enhance the experience for education and workforce program participants; and (3) connects ED education and workforce development programs with DOL workforce programs to provide a coordinated federal education and workforce system, consistent with Executive Order No. 14278 signed on April 23, 2025. This work also serves to "return authority over education to the States and local communities while ensuring the effective and uninterrupted delivery of services, programs, and benefits on which Americans rely" in accordance with Executive Order No. 14242 signed on March 20, 2025.

The Parties' partnership will enhance opportunities to invest in the upskilling of American students and workers to meet rapidly evolving skill demands of industries, including the use of Artificial Intelligence in the workplace; provide common programmatic requirements for identifying and making transparent alternative credentials and assessments to the 4-year college degree that can be mapped to the specific skill needs of prospective employers; and implement efficiencies to streamline information collection by harmonizing performance reporting, reducing the burden on grantees, and ensuring that performance outcomes are measured using the most reliable data sources.

This partnership will further facilitate the integration of programs funded under the Workforce Innovation and Opportunity Act (WIOA) (P.L. 113-128) and the Strengthening Career and Technical Education for the 21st Century Act (Perkins V) by coordinating program administration and grant administration funds appropriated to ED's Office of Career, Technical, and Adult Education (OCTAE) for the adult education and family literacy programs funded under Title II of WIOA and career and technical education (CTE) programs funded by Perkins V. The project will leverage WIOA Title I adult, youth, and dislocated worker program funds; WIOA Title II adult education and family literacy funds; WIOA Title III Wagner-Peyser funds;

Sensitive in accordance with 32 CFR Part 2002

CONTROLLED UNCLASSIFIED INFORMATION



and Perkins CTE program funds, in order to provide a seamless workforce development system designed to assist youth and adults with receiving training and postsecondary education needed to enter into, and persist in, high-wage, high-demand, high-skill occupations. This agreement will also reduce the administrative burden on states by reducing reporting requirements and aligning performance reporting requirements for programs covered under the agreement, to the extent permissible under existing statutory authorities.

## 2. <u>AUTHORITY</u>

This IAA is executed by ED and DOL under authority of 20 U.S.C. § 1231(a), which authorizes the Secretary of Education to enter into arrangements with other Federal agencies to jointly carry out projects of common interest, and to transfer to such agencies funds appropriated under any applicable program, for projects of common interest; 20 U.S.C. § 3475, which authorizes the Secretary of Education to make, enter into, and perform agreements with Federal agencies as the Secretary determines necessary or appropriate to carry out ED functions; 20 U.S.C. § 3479, which authorizes the Secretary of Education to use the services of any agency of the United States, with its consent, in carrying out any function of the Secretary or Department; 29 U.S.C. § 3249(c), which authorizes the Secretary of Labor to enter into contracts and agreements necessary to carry out Title I of WIOA, and 31 U.S.C. § 1535, which authorizes agencies to acquire goods and services from other agencies where amounts are available, the head of the ordering unit assesses that such an order is in the best interests of the U.S. government, the recipient of the order is capable of meeting the need, and the head of the agency determines that said goods and services cannot be provided as cheaply or conveniently by contracting with a commercial enterprise.

## 3. <u>PERFORMANCE</u>

A. The Employment and Training Administration (ETA) within the Department of Labor commits to carry out the following activities in coordination with the Department of Education:
   1. Administration of State formula grants authorized under Title I of the Perkins Act to all 50 States, the District of Columbia, Puerto Rico, the Virgin Islands, and Palau (referred to as "States") intended to improve the academic, technical, and employability skills of youth and adults who participate in career and technical education programs, as well as discretionary programs authorized through the Perkins Act, as authorized by law, pursuant to 31 U.S.C. § 1301;
   2. Administration of the Adult Education formula grant program to the States and provision of assistance to States in order to improve program quality and capacity, as well as discretionary programs authorized through WIOA Title II, as authorized by law, pursuant to 31 U.S.C. § 1301;

Sensitive in accordance with 32 CFR Part 2002

CONTROLLED UNCLASSIFIED INFORMATION



3. Administration of discretionary grants, cooperative agreements, and contracts for national activities funded through the Perkins Act and WIOA Title II programs, as authorized by law, pursuant to 31 U.S.C. § 1301;

4. Implementation of programs and other initiatives that help adult learners become literate, obtain the knowledge and skills necessary for employment and self-sufficiency, obtain secondary school diplomas, and transition to postsecondary education and training, pursuant to Title II of WIOA, related legislation, and Departmental regulations;

5. Implementation of programs and other activities that promote the education of students enrolled in secondary and postsecondary career and technical education programs funded under the Perkins Act, and that help students prepare for high-skill, high-wage, in-demand occupations in current and emerging professions;

6. Promotion of collaboration, coordination, and communication among States, local education agencies, community colleges, and organizations in order to ensure that CTE programs and activities prepare youth and adults for postsecondary education and high-skill, high-wage, or high-demand occupations in current or emerging professions;

7. Encouragement of high-quality and broadly available career, technical, and adult education and literacy programs of study, and career pathways that transition students seamlessly into postsecondary programs and careers funded by programs under the Perkins Act and WIOA;

8. Execution of monitoring visits to ensure discretionary grantees' compliance with the Perkins Act and Title II of WIOA and to protect against waste, fraud, and abuse, as well as to provide technical assistance to discretionary grantees in implementing the Perkins Act and Title II of WIOA;

9. Cultivation of continuous improvement for CTE and adult education and family literacy programs in service of engaging, developing, and inspiring a high-performing workforce informed by high-quality data and accountability systems and quality assurance measures;

10. Provision of technical assistance to OCTAE staff on interagency grant policies and procedures;

11. Provision of assistance in managing and coordinating contracts, procurements, grants, and program administration for OCTAE staff;

12. Coordination and management of DOL physical and information technology assets, information systems security, and cybersecurity administration;

13. Monitoring of States' drawdowns of funds to help ensure that grant funds do not lapse and are used to provide career and technical education programs in accordance with the Perkins Act and adult education and family literacy in accordance with Title II of WIOA; and

14. Provision of appropriate other services specified in the Perkins Act and Title II of WIOA, in coordination with OCTAE staff, including provision of technical and program improvement assistance to National, State, and local education systems, programs, and organizations and on the execution of national

Sensitive in accordance with 32 CFR Part 2002

CONTROLLED UNCLASSIFIED INFORMATION



leadership functions in career and technical education and adult basic education and family literacy under Title II of WIOA.

**B.** The Office of Career, Technical, and Adult Education within the Department of Education commits to carry out the following activities:

1. Management and leadership of OCTAE in accordance with section 202(b)(1)(C) and section 206 of the Department of Education Organization Act (Pub. L. 96–88, as amended);

2. Service, by the Assistant Secretary for Career, Technical, and Adult Education, as liaison for Community and Junior Colleges pursuant to section 202(i) of the Department of Education Organization Act, as amended (Pub. L. 96–88, as amended) (20 U.S.C. §3412(i));

3. Management and leadership of all correctional education programs within the Department of Education, including service as the Correctional Education Officer, pursuant to section 212 of the Department of Education Organization Act (Pub. L. 96–88, as amended);

4. Coordination and partnership in execution of cross-functional priorities aligned to applicable directives, goals, objectives, and special projects; and maintenance of liaison and representation of OCTAE before the Data Governance Board (DGB), Investment Review Board (IRB), Office of Inspector General (OIG), Government Accountability Office (GAO), and other inter- and intra-agency governance bodies;

5. Coordination of clearance of documents that communicate or implement policy, including non-regulatory guidance, Federal Register notices, budget justifications, and legislation;

6. Coordination of review of documents circulated by Executive Secretariat and the Office of General Counsel (OGC) related to grant funds transferred to DOL;

7. Coordination of clearance of grant program announcements, grant competition technical review plans, grant slate memoranda, and information collection packages related to ED grant programs;

8. Provision of leadership for audit resolution processes, including resolution and closure of Single Audit findings for OCTAE formula grant programs;

9. Management and coordination of human resource/capital services, including hiring, awards and recognition, employee engagement, workforce and succession planning, performance management, training and development for OCTAE employees;

10. Oversight of reasonable accommodations and equal employment opportunity (EEO) programs, service as EEO Liaison, and negotiation of personnel related matters, in conjunction with relevant labor stakeholders, Employee/Labor Relations, and other ED and DOL offices for OCTAE employees;

11. Execution of budget formulation, execution, and resource allocation activities, including formulation of administrative budget requests and justifications for

Sensitive in accordance with 32 CFR Part 2002

CONTROLLED UNCLASSIFIED INFORMATION



discretionary funding, salaries and staffing allocations, payroll, and spending, and acquisition plans related to OCTAE programs in partnership with DOL;

12. Coordination of ED responses to GAO inquiries, and resolution of internal audit findings from GAO and the Office of the Inspector General (OIG) that are assigned to ED related to OCTAE programs;

13. Monitoring of internal controls and risk assessments for OCTAE programs;

14. Performance of all duties associated with internal and external accountability requirements related to OCTAE programs, including ED priorities, Government Performance and Results Act (GPRA), and ongoing reporting to Congress;

15. Development of program notices for publication in the Federal Register, announcement of discretionary program competitions and establishment of selection criteria, priorities, and program requirements related to OCTAE programs;

16. Review of annual performance and fiscal reports submitted by States to OCTAE related to OCTAE programs; and

17. Issuance of annual grant awards to States in accordance with the Perkins Act, WIOA Title II, and applicable Education Department General Administrative Regulations (EDGAR);

18. Resolution of matters requiring the exercise of final and conclusive authority that has been assigned to OCTAE by statute, or assigned by statute to the Secretary of Education and delegated to OCTAE; and

19. All remaining activities OCTAE is statutorily required to perform under the Perkins Act and WIOA that are not otherwise identified in Section 3.B.

## 4. **FUNDING**

ED will transfer funds as necessary to cover the costs of the activities described in this agreement related to administration of OCTAE programs, except where the described activities are specifically identified as the responsibility of ED, in an amount up to $2,673,000,000 in FY 2025 for funds appropriated in FY 2024 and FY 2025, other sums in future fiscal years, and (as applicable) for past fiscal years. From these amounts, DOL will carry out the reimbursable activities described in this agreement. ETA will award grants related to OCTAE, which will be active through close-out.

Transfers of funds will be by means of an Intra-Government Payment and Collection (IPAC) system when agreed to by all Parties in writing.

As the provider of funds for the activities carried out pursuant to this Agreement, ED will initiate the IPAC. As the receiver of transferred funds, DOL will provide ED with regular performance updates on a cadence agreed to by the parties that detail all work performed to date for the related project. Additionally, at least quarterly, the Parties will reconcile balances related to revenue and expenses for work performed under the Agreement. Issues arising during this reconciliation process must be brought to the attention of all Parties in writing. Resolution of the reconciliation process issues must be

Page 5 of 8

CONTROLLED UNCLASSIFIED INFORMATION



documented in writing within 30 calendar days of the written notice of the issue. No funds are obligated by this agreement; the Interagency Agreement's 7600B obligates the funds described here. ED agrees to transfer funds to DOL, in the form of lump sum payments for grants and contracts to be awarded, to support the initiative described in this Agreement.

5. **GENERAL PROVISIONS**

   **A. Effective Date**

   This Agreement is effective as of the date of the last signature and will remain in effect until terminated by the Parties. All Parties will review this Agreement periodically and modify it as necessary and appropriate.

   **B. Modification**

   Any modifications to this Agreement must be agreed upon in writing by both Parties.

   **C. Termination/Severability**

   This Agreement may be terminated upon 90 calendar days advance written agreement by both Parties. Upon termination, the Parties may collect costs incurred prior to cancellation of the Agreement plus any reasonable termination costs, provided that such costs do not exceed the total amount obligated on the Form 7600B. A judicial determination that any provision of this Agreement is unenforceable shall not affect the enforceability of any other provision.

   **D. Liability/Indemnification**

   Each party shall be responsible for any liability arising from its own conduct and retain immunity and all defenses available pursuant to federal law. Neither party agrees to insure, defend, or indemnify the other party.

   Each party shall cooperate with the other party in the investigation/resolution of administrative actions and litigation arising from conduct related to the responsibilities and procedures addressed herein.

   **E. Anti-Deficiency Act**

   Nothing contained herein shall be construed to violate the Anti-Deficiency Act, 31 U.S.C. §1341, including by obligating the Parties to any expenditure or obligation of funds in excess or in advance of appropriations.

   **F. Resolution Mechanism**

   Should disagreements arise on the interpretation of the provisions of this Agreement

Sensitive in accordance with 32 CFR Part 2002

CONTROLLED UNCLASSIFIED INFORMATION



or amendments and/or revisions thereto, that cannot be resolved at the operating level, the area(s) of disagreement shall be stated in writing by each party and presented to the other party for consideration. If agreement or interpretation is not reached within 30 days, the Parties shall forward the written presentation of disagreement to respective higher officials for appropriate resolution.

**G.  Effect of Agreement**

This Agreement is not intended to confer any right upon any person. Nothing in this Agreement shall be interpreted as limiting, superseding, or otherwise affecting either party's normal operations or decisions in carrying out its statutory or regulatory duties.

**H.  Points of Contact**

DOL Contact Information:
U.S. Department of Labor
Employment and Training
Administration
Lori Frazier Bearden 200 Constitution Avenue, NW Room 4508
Washington, DC 20210


ED Contact Information:
U.S. Department of Education
Office of Career, Technical,
 and Adult Education
Nick Moore
400 Maryland Avenue,
SW Washington, DC
20202


**I.   Disclaimer**

DOL will not accept responsibility for reimbursement of late fees or other costs incurred due to the negligence of a servicing agency in complying with its obligations to third party contractors.

**J.   Authorizing Signatures and Dates**

The signatories below warrant and represent that they have the competent authority on behalf of their respective agencies to enter into the obligations set forth in this Agreement:

Sensitive in accordance with 32 CFR Part 2002

CONTROLLED UNCLASSIFIED INFORMATION

Lori Bearden
Acting Assistant Secretary
U.S. Department of Labor
Employment and Training Administration                    Date  5/21/25

Nicholas Moore
Acting Assistant Secretary                    NICHOLA  Digitally signed by
U.S. Department of Education                   S MOORE  NICHOLAS MOORE
Office of Career, Technical, and Adult Education          Date: 2025.05.21
                                                          12:20:05 -04'00'     Date

Sensitive in accordance with 32 CFR Part 2002

# EXHIBIT C

## MEMORANDUM OF UNDERSTANDING BETWEEN

### U.S. Department of Education

### AND

### U.S. Department of the Treasury

## I.    INTRODUCTION

The **United States Department of Education** ("ED" or "Employing Agency") and the **United States Department of the Treasury** ("Treasury" or "Gaining Agency") hereby enter into this Memorandum of Understanding ("MOU") regarding the temporary Detail of the employees listed in Appendix A or ("Detailees"). The Detail shall be made on a non-reimbursable basis, whereby the Employing Agency will continue to pay each employee's salary and benefits in accordance with the provisions set forth herein.

## II.   PURPOSE

This MOU constitutes an agreement between the Employing Agency and the Gaining Agency. This MOU establishes the Terms and Conditions for non-reimbursable work done by the Employing Agency for the Gaining Agency. The purpose of this MOU is to provide for the assigning, tracking, and accounting of personnel on a Detail and to set forth the roles and responsibilities of the Employing Agency, the Gaining Agency, and the Detailees.

## III.  GENERAL INFORMATION

**A.** The Gaining Agency has requested this Detail with the Employing Agency. The supervisor for the employees during the detail will be Matt Garber of the Gaining Party.
**B.** The start date of the Detail will be April 9, 2025.
**C.** Either party may terminate this agreement by providing 10 days advance written notice to the other party.
**D.** The Detailees will remain on the rolls of his Employing Agency in his permanent position of record during the Detail. The Employing Agency retains the right to effect such personnel actions as necessary and required in accordance with its personnel management policies.
**E.** Position title of record for the employees: FSA Expert
**F.** The commencement of the Detail is contingent upon the Detailees successful adjudication and receipt of any necessary security clearances and other pre-employment screening required by Treasury. If the Detailees are unable to obtain the required level of access prior to the detail or his access is suspended or revoked for any reason during the detail, Treasury retains the right to immediately terminate the detail. ED is not obligated to provide a replacement. The Gaining Agency will be responsible for the costs of obtaining the security clearance does not satisfy requirements.

## IV.   AUTHORITY

The authority for this Detail is the Economy Act, 31 U.S.C. §§ 1535 - 1536 16 HRM 9334.2A.

## V.    RULES, REGULATIONS, AND POLICIES

**A. General**

1. The Employees are subject to the Federal statutory and regulatory provisions that govern ethical and other standards of conduct, conflicts of interest, suitability, security, and limitations on political activity.

2. Employees will maintain coverage under Federal retirement, group health benefits, and life insurance during the assignment; employees' shares of costs for such coverage continue to be withheld from salary.

3. Employees will continue to accrue annual and sick leave.

4. The Federal tort claims statutes and any other federal tort liability statute shall apply to the Employee.

5. The rules and policies that govern the internal operation and management of the Gaining Agency are applicable to the Employee.

6. Records retention. The Detailees agrees to preserve information worked on for the Treasury team in accordance with the Federal Records Act and other applicable agency or federal records laws, rules, or requirements.

7. Unauthorized disclosure of information. The Detailees will not disclose nonpublic information to outside parties without prior approval from Treasury. If the Detailees improperly discloses non-public information, the Employing Agency agrees to pursue appropriate steps. These provisions are consistent with and do not supersede, conflict with, or otherwise alter the employee obligations, rights, or liabilities created by existing statute or Executive order relating to (1) classified information, (2) communications to Congress, (3) the reporting to an Inspector General of a violation of any law, rule or regulation, or mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety, or (4) any other whistleblower protection. These definitions, requirements, obligations, rights, sanctions, and liabilities created by controlling Executive orders and statutory provisions are incorporated into this agreement and are controlling.

8. The Detailees will not knowingly take any actions that undermine Treasury responsibilities under governing statutes, regulations, or directives.

9. The Detailees will not knowingly take any measures that create cybersecurity risks to Treasury systems.

10. The Detailees will not knowingly access Treasury systems in a manner that fails to comply with all relevant federal, security, ethics, and confidentiality laws, regulations, and policies, including Treasury records management and information security requirements.

11. The Detailees will not access, or attempt to access, classified information without proper security clearance.

12. The Detailees will access Treasury data, information, and systems for only legitimate purposes related to Federal Student Aid.

13. The Detailees will comply with the requirements of the Privacy Act for information that Treasury collects on individuals, including, if necessary, publishing or amending Systems of Records Notices to adequately account for the information it collects.

14. The Detailees will destroy or erase copied Treasury data or information when no longer needed for official purposes in compliance with applicable records laws, rules, and regulations.

15. To the greatest extent possible, the Detailees will use the program agency system documentation to understand how to use the data and information which is being accessed.

16. Travel, transportation, and related allowances may be authorized only in accordance with Federal Travel Regulations. The travel authorization prepared by the Gaining Party or Employing Agency, as applicable, will serve as documentation of authorized allowances.

## VI.    RESPONSIBILITIES OF THE PARTIES

**A. Scope of Work.**

During their assignment, the Detailees will support Federal Student Aid functions performed in partnership with Treasury.

**B. Time and Attendance.**

The Detailees' time and attendance will be maintained by the Employing Agency.

**C.** The **Gaining Agency** agrees to perform the following responsibilities:

- Provide all necessary identification to allow <u>only relevant and necessary access</u> and communications, to include badges, network access, and permissions for assignees to complete work for Treasury. This access includes enabling the employee to access and store documents related to their work for Treasury on Treasury's network and/or hardware. Treasury will provide ED employees with this access on ED devices to the maximum extent practical and allowable by law; to the extent new e-mail accounts or new devices are required by law, Treasury will provide those accounts and devices.
- Provide technical and operational support to the Detilees for all Gaining Agency activities.
- Provide office space and administrative support to the Detailees while assigned to the Gaining Agency.
- Provide the Detailees with badge access to the appropriate facilities.
- Provide the Detailees with duties and tasks according to, and described, in Scope of Work above.

**D.** The **Employing Agency** agrees to perform the following additional responsibilities:

- Maintain personnel records for the Detailees.
- Manage Detailees' leave requests. Leave requests by the assignees will be made to the Employing Agency and Detailees will inform Gaining Agency supervisor of said request.
- Maintain the Detailees' security clearance.

## VII.    TRAVEL AND TRAINING

**A.** All travel and training required by the Detailees at the Gaining Agency during the Detail will be paid for by the Gaining Agency.

## VIII.    CONTACTS

| Role | Name | E-mail Address | Location |
|------|------|----------------|----------|
| **Employing Agency Supervisor** | **Phillip Juengst** | | **Washington, DC** |
| **Gaining Agency Supervisor** | **Matthew Garber** | | **Washington, DC** |

The parties agree that if there is a change regarding the information in this section, the party making the change will notify the other party in writing of such change within five (5) business days.

## IX.    PERIOD OF AGREEMENT AND MODIFICATION/TERMINATION

This MOU will become effective when signed by all parties. The MOU will terminate on the date the Detail is intended to end as noted in Section III (C) above.

**NOTE:** The duration of the Assignment may be amended at any time by the mutual written consent of the parties. <u>Any party may terminate this MOU by providing 30 calendar days' prior written notice to the other party.</u> The addition of additional Detailees may be completed at any time by the mutual written consent of the parties. Any other modification of this MOU may be achieved by executing a separate, subsequent agreed upon written document containing either amendments (changing or eliminating existing provisions) or addenda (adding new provisions).

## X.    OBLIGATIONS AND EXPENDITURES

Nothing in this MOU requires the parties to obligate or expend appropriated funds.

## XI.    THIRD PARTY RIGHTS

This MOU shall not be construed to provide a private right or cause of action for or by any person or entity.

## XII.    OTHER PROVISIONS

Should disagreement arise on the interpretation of the provisions of this MOU, or any amendments thereto, that cannot be resolved at the operating level, the area(s) of disagreement shall be stated in writing by each party and presented to the other party for consideration. If agreement on interpretation is not reached within thirty days, the parties shall forward the written presentation of the disagreement to respective higher officials for appropriate resolution.

Nothing herein is intended to conflict with current Treasury or ED directives. If the terms of this MOU are inconsistent with existing directives of either of the agencies entering into this MOU, then those portions of this MOU which are determined to be inconsistent shall be invalid; the remaining terms and conditions not affected by the inconsistency, however, shall remain in full force and effect. At the first opportunity for review of the MOU, all necessary changes will be accomplished by either an amendment to this MOU or by entering into a new MOU, whichever is deemed expedient to the interest of both parties.

**SIGNATURES:**

JACQUELINE CLAY
Digitally signed by JACQUELINE CLAY
Date: 2025.04.08 14:39:34 -04'00'

Jacqueline Clay
Deputy Assistant Secretary for
Human Resources
U.S. Department of Education

Janice D. Williams
Digitally signed by Janice D. Williams
Date: 2025.04.10 12:54:36 -04'00'

Janice Benjamin
Deputy Director, Office of Human Resources
U.S. Department of the Treasury

4/8/2025

Tom Krause
Fiscal Assistant Secretary of the Treasury, BFS
U.S. Department of the Treasury

# APPENDIX A

| Role | Name | E-mail Address | Location |
|---|---|---|---|
| Senior Treasury Advisor | Phillip Juengst | | Washington, DC |
| Senior Treasury Advisor | Brooks Morgan | | Washington, DC |
| Senior Treasury Advisor | Adam Ramada | | Washington, DC |
| Treasury Advisor | Yinqiu (Julia) Ju | | Washington, DC |
| Treasury Advisor | Pete Tyrell | | Washington, DC |
| Treasury Advisor | Chris Krobath | | Washington, DC |
| Treasury Advisor | Steve Tu | | Washington, DC |
| Treasury Advisor | Luz Wohlfield | | Washington, DC |
| Treasury Advisor | Shital Shah | | Washington, DC |