UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>THE UNITED STATES OF AMERICA, et al.,<br><br>*Defendants*. | Civil Action No. 25-965-JRR |

## DECLARATION OF DOE DECLARANT #3

I, Doe Declarant #3, declare pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am over the age of 18 and have personal knowledge of all the facts stated herein. If called as a witness, I could and would testify competently to the matters set forth below.

2. Prior to receiving a reduction-in-force ("RIF") notice from the U.S. Department of Education ("the Department"), I served as the Deputy Performance Improvement Officer and the Acting Performance Improvement Officer in the Performance Improvement Office. The Performance Improvement Office is a unit within the Department's Office of the Deputy Secretary. Prior to joining the Performance Improvement Office, I served in other roles in the Department focused on strategic planning, data, and policy, including a detail in the Office of Budget Service. I worked for the Department for approximately ten years.

### Statutorily Required Strategic Planning Process

3. The Government Performance and Results Act of 1993 ("GPRA") requires that federal agencies publicly publish a strategic plan that includes "general goals and objectives,

including outcome-oriented goals, for the major functions and operations of the agency." 5 U.S.C. § 306(a)(2), as amended, *see* 31 U.S.C. §§ 1115–1116, 1120–1125.

    4.    GPRA sets out a range of requirements for agency strategic plans, including a mission statement, performance goals, and a plan for achieving those goals. 5 U.S.C. § 306; 31 U.S.C. § 1115. The Department's "mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access." U.S. Dep't of Educ., *Mission of the U.S. Dep't of Educ.*, https://www.ed.gov/about/ed-overview/mission-of-the-us-department-of-education (last visited June 10, 2025). The Department's current strategic plan is for Fiscal Years ("FY") 2022-2026. U.S. Dep't of Educ., *Fiscal Years 2022-2026 Strategic Plan* (2022), https://www.ed.gov/sites/ed/files/about/reports/strat/plan2022-26/strategic-plan.pdf. GPRA also creates annual reporting requirements. 31 U.S.C. § 1116; U.S. Dep't of Educ., *FY 2023 Annual Performance Report and FY 2025 Performance Plan* (2024), https://www.ed.gov/sites/ed/files/about/reports/annual/2025plan/fy2023apr-fy2025app.pdf (last visited June 10, 2025).

    5.    The Performance Improvement Office is responsible for meeting the Department's statutory obligations under GPRA, as well as the requirements under the Department of Education Organization Act, § 426, codified at 20 U.S.C. § 3486; the Federal Agency Performance Act of 2024, codified in amendments to 31 U.S.C. § 1121; the Foundations for Evidence-Based Policymaking Act of 2018, codified in amendments to 5 U.S.C. § 312; the Federal Information Security Modernization Act of 2014, codified at 44 U.S.C. § 3551; the Chief Financial Officers Act of 1990, codified at 31 U.S.C. §§ 901–902; the Chief Human Capital Officers Act of 2002, § 1402, codified at 5 U.S.C. § 1402, and the Federal Manager's Financial Integrity Act of 1982.

2

The Office is also responsible for fulfilling regulatory mandates in Office of Management and Budget ("OMB") Circulars A-11 and A-123.

6. In my time in the Performance Improvement Office, the team had eight full-time employees and one vacancy, the senior position of Performance Improvement Officer, which is why I served in that role in an acting capacity.

**Budget**

7. At any given time, the Department is managing multiple budget years: (1) the current fiscal year; (2) the new budget cycle and (3) future planning. In my experience, for each budget cycle, OMB sends a top-line dollar amount to the Department. The Office of Budget Service, in partnership with senior leaders in the Office of Planning, Evaluation, and Policy Development ("OPEPD"), leads the process of making a budget based on that dollar amount. At a high level, the process involves developing budget requests that align with the Department's needs and administration priorities that are set under the direction of the White House, the Secretary, and OPEPD and other senior leadership, by reviewing proposals and recommendations from different offices and engaging in negotiations across the agency. Analysts in the Office of Budget Service use internal data, such as data from the Institute of Education Sciences ("IES"), programmatic data, operations data, and student loan data, to inform justifications for specific requests, and to model changes in funding needs. Analysts also work with offices across the Department to hone budget request justifications, first for OMB and then for Congress.

8. After a budget is proposed, Congress appropriates money to the Department through appropriations statutes. Appropriations statutes and their accompanying explanatory statements are very detailed. For example, competitive grants such as the Teacher Quality Partnership Program ("TQP"), the Supporting Effective Educator Development Grant Program ("SEED"), and the Teacher and School Leader Incentive Program ("TSLI") are funded at the

3

activity level, meaning that Congress appropriated a specific amount of money for those particular programs. U.S. Dep't of Educ., *Department of Education Fiscal Year 2025 President's Budget* 3, https://www.ed.gov/sites/ed/files/about/overview/budget/budget25/25pbapt.pdf.

9. In nearly a decade working for the Department, I never saw the Department terminate a competitive grant program. Competitive grants go through a rigorous process of formulating competitive priorities through notice and comment, on top of absolute priorities required by statute, then applications are reviewed carefully against these criteria. This is in addition to a detailed assessment of the potential risk posed by applicants using multiple data sources, as required by 2 C.F.R. § 200.206. In my experience with the Department, grants were awarded very intentionally and with a lot of care. Terminating an individual grant, let alone an entire program, would be very unusual.

10. In my experience, during past changes in administration, grants from the previous administration continued to be funded throughout the terms of the grants because the grantees were determined to be well-qualified to carry out the program in accordance with the grant requirements at the time of application and because the competitive priorities used by the previous administration were developed through notice and comment. The new Secretary can create supplemental priorities, which go through public comment and then become additional priorities that the Department can use as competitive priorities in new grant competitions. If an administration wants to set different competitive priorities for a grant program, the process is to run a new competition with new competitive priorities (in addition to the absolute priorities that align with statutory requirements) based on the new Secretary's supplemental priorities. Throughout the process of setting supplemental priorities and, as applicable, setting up new competitions, the Department would continue funding previously awarded competitive grants.

**RIFs**

11.     On March 11, 2025, the Department's Chief Human Capital Officer sent me an email stating that my organizational unit was being abolished, and all positions within the unit would be abolished, including mine. The email further stated that I would be placed on administrative leave beginning March 21, 2025.

12.     On March 13, 2025, I met with Denise Carter, who until Secretary McMahon's confirmation had been the Acting Secretary of the Department, for our regular biweekly meeting. I reported directly to her in my capacity as Acting Performance Improvement Officer, who by statute reports to the Deputy Secretary, a role that was vacant at the time. During the meeting, I asked Carter who would fulfill the Performance Improvement Office's statutory functions after the Office was abolished. Acting Secretary Carter informed me that because the Department as an agency was winding down, and would not exist moving forward, it would not be responsible for meeting those statutory functions.

13.     Carter told me to write a transition memorandum for the person who would become the Acting Performance Improvement Officer, Richard Lucas. At that time, he also had recently been named Acting Director of Budget Service and Acting Assistant Secretary of the Office of Finance and Operations. Carter told me that Lucas would oversee the winding down of the Performance Improvement Office's functions.

14.     Eliminating the Performance Improvement Office places the Department at risk of violating the mandates set by GPRA. Our team was fulfilling statutory requirements under that law and related statutes and regulations. The strategic plan and annual reports also provide essential data to the Department to continuously improve performance and mitigate risks, ensuring the Department is able to successfully meet the work of the agency as required by Congress and as entrusted by the American people. The strategic plan and annual reports are also key

5

transparency tools that give the public insight into the agency's operations and performance. Abolishing the Performance Improvement Office threatens the Department's ability to meet GPRA mandates, reduces the Department's ability to monitor and improve performance, and risks losing important information for the public to understand how the Department is performing and how our tax dollars are being used.

15. If the Court wishes to question me on any of the information contained herein *in camera*, I am prepared to testify to it at the Court's convenience.

I declare under penalty of perjury under the laws of the United States that, to the best of my knowledge, the foregoing is true and correct.

Executed on June 13, 2025.

/s/ Doe Declarant #3*
Doe Declarant #3

*Plaintiffs' counsel hereby certifies that they have a signed copy of the foregoing document available for inspection.