# Exhibit V

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> THE UNITED STATES OF AMERICA, et al., <br><br> *Defendants*. | Civil Action No. 25-965-JRR |

**DECLARATION OF DOE DECLARANT #13**

I, Doe Declarant #13, declare pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am over the age of 18 and have personal knowledge of all the facts stated below. If called as a witness, I could and would testify competently as to the matters set forth below.

2. From July 2022 through January 19, 2025, I served as the Deputy Assistant Secretary ("DAS"), a non-Senate-confirmed political appointment, for the Office of Career, Technical and Adult Education ("OCTAE") in the U.S. Department of Education ("the Department"). I also served as Acting Assistant Secretary of OCTAE for the last six months of my time in the Department.

3. Since March 2025, I have been Vice President of a non-profit organization that works to improve public education. I lead the non-profit's work on career pathways and postsecondary success.

4. Prior to joining the Department in 2022, I worked at a state education agency for eight years. For one year, I served as the Associate Secretary of Workforce Support, and for seven

years prior to that I was the Director of Career & Technical Education and STEM Initiatives. I also spent five years as a Program Specialist in Career and Technology Education at another state education agency. I began my career as a middle school and high school career and technical education teacher. I have a bachelor's degree from Pennsylvania Western University, California ("PennWest California") and a master's degree in education from Stockton University.

5. My job responsibilities as DAS in OCTAE included overseeing policy, grants, and strategy for career and technical education ("CTE"), adult education, correctional education, and community and technical colleges.

6. OCTAE administers and coordinates programs related to career and technical education, adult education and literacy, and community colleges. In terms of CTE, OCTAE aims to help all students acquire challenging academic and technical skills to prepare for high-skill, high-wage, and in-demand occupations. In adult education, OCTAE works to enable adults to acquire the skills necessary to function in society, including through literacy training, completion of secondary school, pursuing citizenship, and participating in job training and retraining. In the community college sphere, OCTAE provides national leadership to strengthen the role of community colleges in expanding access to postsecondary education for youth and adults.

7. OCTAE is under the supervision of its Assistant Secretary, and consists of three divisions:

    a. Immediate Office of the Assistant Secretary, which provides overall direction and leadership to the other two divisions. The Immediate Office of the Assistant Secretary includes two units:

        i. Policy, Research, and Evaluation Staff ("PRES") Unit; and

        ii. Executive Office.

    b. Division of Academic and Technical Education ("DATE"); and

    c. Division of Adult Education and Literacy ("DAEL").

8. OCTAE administers more than $2.3 billion dollars' worth of grant programs created and funded by Congress to improve and ensure the availability of high-quality career and technical education programs and adult education. Specifically:

    a. DATE administers grant programs under the Carl D. Perkins Career and Technical Education Act and its most recent reauthorization, the Strengthening Career and Technical Education for the 21st Century Act ("Perkins V"). This includes (dollar amounts are 2024 appropriations):

        i. $1.4 billion in Perkins Basic State Grants, which are formula grants. These funds go to states for the development and implementation of CTE programs. States subgrant most of these funds to school districts and community and technical colleges to support CTE programs; and

        ii. $26 million in Perkins discretionary grants. These include grants for national activities, including an Innovation and Modernization program to research and replicate best practices in CTE; for Native American and Native Hawaiian career and technical education; and for Tribally controlled postsecondary career and technical institutions.

    b. DAEL administers grant programs under Title II of the Workforce Innovation and Opportunity Act, which is also called the Adult Education and Family Literacy Act ("AEFLA"):

        i. $935 million in AEFLA formula grants, which go to states to fund adult education and skills development, including for people with barriers to

employment, low-income individuals, immigrants, and individuals with limited English skills; and

ii. $14.5 million in AEFLA discretionary grants for national activities. This includes research, correctional education programs, and state or leadership consortia to support state innovation.

9. As of January 1, 2025, there were approximately 65 full-time equivalent ("FTE") employees in OCTAE. Based on conversations I have had with former colleagues who are still in OCTAE, and those who are no longer there, there are now 31 people still employed in OCTAE. Approximately eight of them are still on administrative leave due to prior participation in DEI trainings or programs; only about 23 are currently working. Specifically:

a. Approximately 12 FTEs, including the Division Directors of DAEL and DATE, the Assistant Director of DATE, and several staff in PRES, were placed on administrative leave for DEI reasons on January 31.

i. Eight of these employees were put on administrative leave for participating in the Changemakers program, which was an effort to strengthen the relationship between career staff and their career supervisors and support employee voice in the process of developing the Department's national activities and investments. DEI was only one part of this program.

b. Approximately 12 FTEs took the "fork in the road" deferred resignation program.

c. Approximately 7 FTEs took two other early retirement incentive programs that were offered to Department employees.

4

    d. Approximately 15 FTEs were eliminated under the March 11 RIF. Nine of these were non-management. Of the approximately 15:

        i. 2 were in the Executive Office;

        ii. 2-3 were in PRES;

        iii. 5-6 were in DALE, approximately half in the monitoring/administration branch and half in the innovation and improvement branch; and

        iv. 4-5 were in DATE.

10. These staffing cuts have significantly diminished the leadership of OCTAE. Among the three divisions in OCTAE, there is only one Division Director and one Deputy Director left. DATE, the division that administers over a billion dollars in Perkins V grants, does not have a Division Director or a Deputy Director, and has only one supervisor. DAEL, the division that administers AEFLA grants, has no Director, one Deputy Director, and only two supervisors.

11. Based on my experience in OCTAE, it is inevitable that these dramatic staffing cuts will make it impossible to administer all the grant programs within OCTAE's purview on time and consistent with the law. This in turn will result in harm to students, businesses that need well-trained workers, and communities. Among the positions in OCTAE that are now vacant are those whose primary responsibilities were the management of formula or discretionary grants. About 10 FTEs are required to do the work necessary to get Perkins grant funding to states, including distribution of funds, management of grant awards and conditions, monitoring routines with states, and other functions required by statute. There are not enough staff remaining in OCTAE who have the training and experience to administer the Perkins program correctly. As a result, the staffing cuts will result in significant difficulty, delays, or errors in dissemination of funds to grant recipients. Under the statute, initial payment of 25% of Perkins formula grants is due on July 1,

and the other 75% on October 1. I am skeptical that this grant funding will go out both on time and correctly this summer and fall.

12. The staff cuts will also make it nearly impossible for OCTAE to administer its national activities grant budget, which requires contract management.

13. Cuts to the Department's data collection and analysis capacity will also cause serious harm to OCTAE's ability to carry out its statutorily required functions, including grant administration. The RIF gutted the Institute of Education Sciences ("IES"), which is the independent statistics, research, and evaluation arm of the Department of Education. OCTAE worked with IES on many data collections, including national evaluations of Perkins and AEFLA programs; research on workforce and industry trends, which informed OCTAE's guidance to states and local entities about how to align their programs and the credentials they offer with high-paying, in-demand jobs; and the collection and analysis of the data that states are required to report as part of their participation in CTE formula grant programs.

14. This last category of data—statutorily required state-reported data—is crucial to the grant administration process, because the data are used in the formulas that determine how much funding each state is entitled to receive under Perkins and AEFLA formula funding grants. States are required to report data including their state population in particular age groups, per-capita income, and the state's working-age population. Assuming states continue to report these data, based on my experience, the skeletal staff that remain at IES will not have the capacity to competently and timely review and analyze the data, correct any mistakes, and answer questions from the field about data collection requirements. This will result in errors and delays in processing these data. Those errors and delays will result in violations of statutory requirements, incorrect calculation of grant awards, and possibly delays in grant funding.

15. In the absence of adequate staff and timely, reliable data, OCTAE will not be able to carry out its statutory responsibilities to conduct performance evaluations, monitoring and site visits for state and local grantees, and to conduct targeted outreach to states based on their performance metrics to ensure that federal funds are being used effectively and consistent with the law. It was already difficult to do this with fidelity, even with 65 employees.

16. The staffing cuts will also limit the Department's ability to ensure that states are complying with the Perkins V statutory requirement to ensure their CTE and workforce development programs are not creating or maintaining discriminatory barriers to access, opportunity, or completion. The Perkins statute includes a component aimed at improving the gender balance in secondary and post-secondary CTE programs that lead to high-paying jobs which are heavily dominated by one gender. The statute requires states to devote a portion of their Perkins funds to addressing "non-traditional fields," such as computer science and technology, in which one gender comprises less than 25% of the workforce, to set targets and evaluate how well they meet them. 20 U.S.C. §§ 2302(33), 2322, 2355. Another portion of the Perkins statute requires states to take into account the needs of special populations, which includes individuals with disabilities, from economically disadvantaged families, who are homeless, youth in the foster care system, single parents, and English language learners. 20 U.S.C. §§ 2302(48), 2321, 2323, 2342, 2354. The staffing cuts will harm OCTAE's ability to analyze information about these civil rights and equity issues, and to put strategies in place through national activities to address them.

17. The staffing cuts will also harm OCTAE's ability to provide real-time technical assistance to state and local grantees. Even if OCTAE is able to get state formula grants out on time notwithstanding the cuts, based on my experience, there will be problems with state distribution of the funds to subrecipients, including school districts, community colleges, faith-

7

based and community-based organizations, and correctional institutions. The Perkins statute requires that the state send grant funds to these subrecipients in a very specific manner. For example, my office issued a guidance document to states to remind them to ensure that tribal entities are included in their Perkins formula allocation on the K-12 side, because the Perkins formula is based on census data which do not include tribal populations (by contrast, the Elementary and Secondary Education Act's grant structure has a set-aside for tribal entities). OCTAE will not have the staff to provide technical assistance and monitoring to ensure this kind of technical assistance occurs. The staffing cuts will also mean OCTAE staff will not be able to build meaningful relationships with recipients, which are important in providing internal directions on how national activities funds and other technical assistance efforts should be directed in the future.

18. Based on my experience in OCTAE, the staffing cuts will have a negative impact on students, employers, and local institutions. If OCTAE is not able to distribute grants in a timely way or ensure that these funds are directed appropriately, or if states and schools are not sure they can count on federal funding or have support to implement the program per the statute, schools will not be able to budget and make programmatic and hiring decisions for next year. Without research-informed guidance from OCTAE, states and local entities will suffer from a lack of guidance and support. There will be fewer schools that meet the quality indicators specified in the statute, including the number of industry-recognized and in-demand credentials, college-credit programs, and work-based opportunities offered, as well as postsecondary credentials awarded, and impacts to non-traditional gender concentration at the secondary and postsecondary levels. If states and schools offer programs and credentials that are not informed by research, students may

earn credentials which are not actually valuable or in demand, which will impact post-program placement.

19. On the adult education/AEFLA side, the impacts of the staffing cuts and resulting delays in grant funding and lack of guidance will be most severe on the three core adult populations served by AEFLA: English language learners, adults with low literacy and numeracy rates, and individuals who have had interactions with the criminal justice system. Without research-informed guidance from OCTAE, states and local entities will suffer from a lack of guidance and support. There will be fewer postsecondary institutions, schools, and community-based organizations which offer AEFLA programs that meet quality indicators specified in the statute, including measurable skills gains and effectiveness in serving employers. If states and schools offer programs and credentials that are not informed by research, students may earn credentials which are not actually valuable or in demand, which will impact post-program placement, median earnings, and employment rates.

I declare under penalty of perjury under the laws of the United States that, to the best of my knowledge, the foregoing is true and correct.

Executed on June 27, 2025.

/s/ Doe Declarant #13*<br>Doe Declarant #13

\* Plaintiffs' counsel hereby certifies that they have a signed copy of the foregoing document available for inspection.