# Exhibit HH

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> THE UNITED STATES OF AMERICA, et al., <br><br> *Defendants*. | Civil Action No. 25-965-JRR |

### DECLARATION OF DR. JERRY JOHNSON

I, Dr. Jerry Johnson, declare pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am over the age of 18 and have personal knowledge of all the facts stated herein. If called as a witness, I could and would testify competently to the matters set forth below.

2. I am the Phoebe Moore Dail Distinguished Professor in Rural Education at East Carolina University. I served as the policy research director for the Rural School and Community Trust, a national non-profit organization that advocated for equitable and adequate funding for rural schools. I have written more than 70 publications on rural education policy, school-based leadership, and place-based learning. I co-author the bi-annual *Why Rural Matters* report. National Rural Education Association, *Why Rural Matters*, https://www.nrea.net/why-rural-matters. In 2017, I received the Stanley A. Brzezinski Memorial Rural Education Research Award from the National Rural Education Association. Prior to becoming a higher education faculty member and administrator, I worked as an English teacher and high school principal. I have an Ed.D. in Educational Administration from Ohio University.

3. According to the forthcoming 2025 *Why Rural Matters* report that I co-authored, approximately 7.8 million public school students in the U.S. attend schools in districts designated as "rural" by the National Center for Education Statistics ("NCES"), accounting for over one in six students. As further described in that report, one in seven rural students experiences poverty, one in fifteen lacks health insurance, and one in ten has changed residence in the previous 12 months. *See also* Daniel Showalter, Sara L. Hartman, Jerry Johnson, & Bob Klein, *Why Rural Matters* 2 (2023), https://wsos-cdn.s3.us-west-2.amazonaws.com/uploads/sites/18/WRMReport 2023_DIGITAL.pdf (previous report in series).

4. The problem of inadequate access to school psychologists and school counselors is in rural school districts. Our 2025 *Why Rural Matters* report will show that the ratio is 297 students to every one school psychologist or school counselor.

5. Rural school districts face specific challenges that require higher education spending. Transportation costs are higher in rural school districts, consuming a larger proportion of the school budget as a result. While non-rural school districts spend $14.93 on instruction compared to each dollar of transportation costs, rural school districts spend $11.09 on instruction for each dollar they spend on transportation. *Id.* at 10.

6. The data collected by NCES is critical to determining the federal funding that rural school districts receive. NCES calculates "locale codes" that categorize places by area type: City, Suburban, Town, and Rural. Classification as a "Rural" locale is a requirement for school districts to qualify for formula grant funds under the Rural Education Achievement Program ("REAP"), authorized by Title V, Part B of the Elementary and Secondary Education Act of 1965 ("ESEA"). *Rural Education Achievement Program*, U.S. Dep't of Educ. (last updated May 14, 2025), https://www.ed.gov/grants-and-programs/formula-grants/rural-education-achievement-

program. REAP includes two formula grant programs: the Small, Rural School Achievement Grant Program ("SRSA"), which benefits Local Education Agencies ("LEAs") classified as small and rural, and the Rural and Low-Income School Grant Program ("RLIS"), which benefits rural LEAs with a high concentration of students from low-income families. *Id.*

7.     Without up-to-date locale codes assigned by NCES, the Department of Education ("the Department") will be unable to accurately identify districts as rural, jeopardizing SRSA and RLIS formula grant funds. Small rural LEAs that are improperly deemed ineligible for SRSA funds based on an outdated locale assignment will lose resources that can be used for a wide range of educational expenses, including early childhood education, high quality professional development for teachers, and academic enrichment. U.S. Dep't of Educ., *Informational Document on the Rural Education Achievement Program (REAP)* 21 (2001), https://www.ed.gov/sites/ed/files/2024-10/FY25_19-0043-REAP-Informational-Document-final-OS-Approved-1.pdf. Likewise, rural school districts with a high concentration of students from low-income families that are inaccurately determined to be ineligible for RLIS funds will lose crucial support for expenses ranging from Advanced Placement classes to digital resources for students in underserved areas. *Id.* at 35.

8.     Awarding SRSA and RLIS formula grant funds using outdated daily attendance and poverty data for the 2026–2027 school year would also harm rural school districts. NCES works with the Census Bureau to produce Small Area Income and Poverty Estimates ("SAIPE") at the school district level, and changes in school district population affect those estimates. Our forthcoming 2025 *Why Rural Matters* report will show that one in thirteen students in rural school districts has changed residence in the previous 12 months. Student mobility in or out of a school district can affect that district's eligibility for funds and the amount of funding a district receives

3

under programs like Title I. A school district that has gained population that is not accounted for by outdated data will lose out on funding to which the district is entitled. According to the Department's own guidance, "[t]he Department begins the process of determining REAP eligibility almost a year before it intends to make awards." U.S. Dep't of Educ., *supra*, at 4. This means that the dismantlement of NCES, if not remedied, will deprive the Department of the data needed to calculate the awards for the 2026-2027 school year.

9. Rural school districts also rely on other federal grants that depend on data inputs generated by the Department. For example, formula grants under Title III-A of ESEA are awarded to support English Learners. The proportion of English Learners in rural school districts has been growing at an accelerating rate over the past decade. Showalter, *supra*, at 146. Without the calculations of English Learners by the Department, school districts with increasing numbers of English Learners will not receive the funds which they are statutorily mandated to receive to support those students.

10. Where rural school districts face uncertainty in federal funding, that uncertainty forces them to make cuts on very short notice and scramble to find other funding sources. Rural school districts facing funding uncertainty may be forced to lay off staff, which is a particularly acute harm for rural schools. Recruitment and retention is the number one challenge facing most rural schools. Replacing specialized positions such as science teachers and special educators is especially challenging. A gap in funding would result in the least-experienced teacher being let go, even if that teacher has subject-matter expertise that is difficult to replace. If funding uncertainty arises after the calendar deadline for layoffs has passed, school districts will have to make other difficult choices, such as seeking emergency levies or cutting administrative positions.

11. The harm from the dismantling of NCES and the rest of the Department's data infrastructure extends beyond the effects on formula grant programs. If the Department continues collecting data but shuts down the public access to data that NCES has historically provided, the lack of public access will cut off a crucial source of transparency. The formula grant calculations have, at times, resulted in vast disparities in per-pupil funding across districts. Without the public-facing data, researchers would be unable to identify and publicize such problems. That loss of transparency will ultimately harm students and schools by preventing policy reform to fix problems of inequitable distribution of public funds.

I declare under penalty of perjury under the laws of the United States that, to the best of my knowledge, the foregoing is true and correct.

Executed on June 12, 2025.

Dr. Jerry Johnson