# Exhibit RR

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED PEOPLE,
et al.,

          *Plaintiffs*,

          v.

THE UNITED STATES OF AMERICA, et al.,

          *Defendants*.

Civil Action No. 25-965-JRR

## <u>DECLARATION OF PATRICK MORAN</u>

I, Patrick Moran, declare under penalty of perjury, under 28 U.S.C. § 1746, that the following is true and correct:

1. I am over 18 years of age and competent to provide this declaration. This declaration is based on my personal knowledge, information, and belief.

2. I serve as President of American Federation of State, County and Municipal Employees (AFSCME) Maryland, Council 3 ("AFSCME Council 3"). AFSCME Council 3 has local union affiliates and in total represents nearly 45,000 public service workers who work in the local, city, county, and state government and in education across the state of Maryland. AFSCME Council 3 is an affiliate of the American Federation of State, County and Municipal Employees, AFL-CIO ("AFSCME International"). Membership in AFSCME Council 3 is voluntary and requires the payment of membership dues, a portion of which is remitted to AFSCME International. All members of AFSCME Council 3 are also members of AFSCME International.

3.   AFSCME Council 3 represents public service workers across Maryland and advocates for dignity, respect, and a fair standard of living for all Maryland public servants in their workplaces. AFSCME Council 3 members keep Maryland public universities and colleges running, provide support in Maryland schools, maintain libraries and museums, care for the elderly, provide social services to those in need, represent defendants in court, work in correctional facilities, drive school buses, and maintain Maryland's public parks and roads.  AFSCME Council 3 ensures its members have the opportunity to participate in decisions that affect them at work and secure better working conditions overall—AFSCME Council 3 also enforces the terms and provisions of collective bargaining agreements (CBAs) through established grievance procedures and arbitration as necessary.  Understanding that state laws and political decisions control the workplaces of AFSCME Council 3 members—and its ability to organize different sectors of workers in Maryland—our union also has a long history of fighting for pro-worker legislation since the union first organized in the 1970s.  This legislative work is part of AFSCME Council 3's representational work because our members know we advocate for pro-worker policies.  At bottom, AFSCME Council 3's mission is to zealously represent our members and expand their right to collectively bargain, be it at the bargaining table or in the halls of state and local government.

4.   I became president of AFSCME Council 3 in 2012 and have worked for AFSCME Council 3 for 23 years.  I have personally been involved in the bargaining of collective bargaining agreements with the State of Maryland since 2007.

5.   As the president of AFSCME Council 3, I am familiar with the different bargaining units that AFSCME represents across Maryland.  As president, and as someone involved in the bargaining of CBAs on behalf of AFSCME Council 3 since 2007, I am also familiar with the

2

state of collective bargaining with the employers that employ our members, which includes knowledge concerning the financial and budgetary constraints of our public sector employers, including but not limited to the various public-school systems in Maryland.

6. AFSCME Council 3 represents employees of school districts across the state of Maryland, including in Baltimore County, Anne Arundel County, Howard County, Harford County, Carroll County, and Charles County. These workers include, but are not limited to, paraprofessionals, instructional assistants, bus drivers, janitors, administrative support staff, and cafeteria workers.

a) Title I schools are located in each of these school districts. Title I schools range from K-12 and are schools that receive additional federal funding to help ensure that children, regardless of family income, receive equitable and quality education that will allow students to become academically proficient. Maryland schools use Title I funding for a variety of initiatives that impact AFSCME Council 3 members, which may include the hiring of additional teachers and instructional assistants, increasing family programming, improving available technology and instructional materials, and providing professional development opportunities for staff. Title I funds are also used to provide free meals to students, including over the summer, and field trips.

7. School districts in Maryland also receive Individuals with Disabilities Education Act (IDEA) federal funding. Schools use IDEA funds to provide special education and related services to eligible children with disabilities.

8. [intentionally left blank]

9. AFSCME Council 3 represents workers at public schools in Charles County, which has eleven Title I schools. The school district for Charles County Public Schools receives over $5 million per year in Title I federal funding and over $5 million per year in IDEA federal funding.

Charles County Public Schools also receive over $300,000 per year in Career and Technical Education federal revenue. These funds are allocated and administered by the U.S. Department of Education.

10. AFSCME Council 3 members who are employed by Charles County Public Schools include paraprofessionals who work to support children in and outside of the classroom through individualized attention necessary for students with particularized needs to thrive in the classroom, including special education programming and career and technical education assistance. Some paraprofessionals work with an individual student, while others manage their own classrooms based on the type of academic support needed and the number of students that have special needs overall.

11. Over 40 members of AFSCME Council 3 work in Title I schools or as administrators of Title I programs at their schools. AFSCME Council 3 represents 34 members who are Instructional Assistants in Title I schools, at least five of which specialize in Special Education. AFSCME Council 3 also represents three Technology Facilitators at Title I schools. Four AFSCME Council 3 members are Behavior Specialists for Special Education students.

12. AFSCME Council 3 members are integral to the academic environment in their schools. Instructional Assistants at Charles County Public Schools, for example, have duties that may require them to assist teachers in planning and executing instructional activities, to assist in lesson planning, to provide substitute coverage, or to work with small groups to provide instructional reinforcement.

13. AFSCME Council 3 also represents individuals who administer the Title I program and its related funding. One aspect of administration is the creation of a Family Engagement Plan which outlines steps for student achievement between the school, student, and home. This plan is

distributed and implemented by Title I Family Liaisons.  AFSCME Council 3 represents the Title I Family and Program Liaison in Charles County Public Schools.

14. AFSCME Council 3 typically bargains CBAs with their Maryland public employer counterparts, like various Maryland school districts, in Fall and Winter preceding the start of the new fiscal year, which is July 1.  In the case of CBAs with school districts, the school districts will account for the financial commitments of their CBAs with AFSCME Council 3 in their budget requests for the following fiscal year—this includes operating budget projections necessary to fulfill wage and benefit commitments under CBAs.  The school districts will then submit their budget requests, typically in May, to the relevant county or city council which will then allocate state and federal funds—including funds granted and administered by the Department of Education—necessary to operationalize the terms of a given CBA in the upcoming fiscal year.

15. The Trump Administration's cuts to the Department of Education have created budgetary shortfalls for multiple school districts that employ AFSCME Council 3 members—these budgetary gaps have resulted in requests from employer school districts to reduce wage scales or available positions that had already been agreed to in CBAs.  In the fall of 2024, AFSCME Council 3 and its affiliated local unions followed its standard bargaining timeline with various school boards and reached agreements on CBAs that were meant to take effect for the 2025-2026 fiscal year, which begins on July 1, 2025.  However, due to the Department of Education funding cuts, various school boards asked AFSCME Council 3 or its affiliates to return to the bargaining table for a "wage reopener" because the wage scales agreed to in fall and winter, were no longer feasible given the budgetary shortfalls.

16. Public schools in Maryland, like Title I schools in Charles County Public Schools, for example, have operating budgets that rely directly on federal funding, including but not limited to Title I federal dollars, IDEA funding, and Career and Technical Education Funds. That federal funding—which for Charles County Public Schools totals more than $10.5 million dollars—is part and parcel of a school district's budget and necessarily informs a school's ability to hire, develop, and retain staff, adequately fund specialized academic programming for students with particularized needs, and other overhead expenses.

17. By losing approximately $10.5 million in federal education revenue, or having it unduly delayed, Charles County Public Schools will face a new fiscal year with a grossly reduced operating budget that necessarily and directly harms the working conditions of AFSCME Council 3 members. Based on my years of experience representing the members of AFSCME Council 3, I know that a financial gap of that size will have ripple effects through the overall operational capacity of school districts and Title 1 schools—the loss of these funds will almost certainly result in layoffs to AFSCME Council 3 members, increased workloads to remaining staff, and more limited resources and educational tools for schools that find themselves cash-strapped. In short, it is substantially certain that the loss of Department of Education funds—or the diversion of funds from existing, non-DOE funded programs to make up the funding gap in Maryland schools—will make it harder for AFSCME Council 3 members to do their jobs due to understaffing and other constraints, and it will result in the termination of school staff positions.

18. AFSCME Council 3 members are also facing reductions to their projected wage increases. For example, when they completed negotiations for a successor CBA in January 2025, Charles County Public Schools (CCPS) and AFSCME Council 3 had agreed to a 4% wage increase for AFSCME bargaining unit members. However, due to reduced federal funding from

the Department of Education, CCPS told AFSCME that it could no longer meet the 4% wage increase commitment from the CBA and instead proposed a reduced 2% wage increase.  In discussions concerning the viability of wage increases for AFSCME members, CCPS also listed a number of programs that CCPS was considering cutting to bridge its budgetary gap, and that loss of programming would have impacted available bargaining unit work for AFSCME members in Charles County.  Faced with claims from CCPS that the school district did not have enough funding, due in part to the Department of Education cuts, the local AFSCME union agreed to a 50% lower wage increase than had originally been envisioned for fiscal year 2025-2026.

19. In May 2025, the Howard County Council tried to balance the budget to address steep cuts to its federal and state funding, including Department of Education funds, but it nevertheless needed $15 million more to meet its financial commitments and pay for existing services.  On June 5, the Howard County school board voted to close the funding gap by cutting $11.3 million in costs and authorized the elimination of 127 positions.  At least eight of the positions the Howard County Public School System (HCPSS) voted to eliminate fall within AFSCME Council 3 bargaining units.  That is, AFSCME lost eight job titles within its membership, which will decrease Council 3's potential for membership in this school district, negatively impact the Union's bargaining power in this school district, and reduce overall voluntary contributions that Council 3 may receive to carry out its critical representational work.  To address its budget shortfall, HCPSS is also attempting to scale back the previously agreed upon wage increases in its CBA with AFSCME.  The Union has, therefore, directed resources to renegotiate wage increases—in the month before the new fiscal year is set to begin—that its AFSCME Council 3 members in HCPSS were expecting for 2025-2026.

20. AFSCME Council 3 has also been forced to consider deferring wage increases for members who work in Baltimore County Public Schools (BCPS) due to BCPS budget concerns that were prompted, at least in part, by Department of Education cuts.  There, the parties began negotiating their successor CBA in the fall of 2024 and reached an agreement by December 2024.  In May 2025, however, BCPS requested a wage reopener from the Union and proposed that projected wage increases for the 2025-2026 fiscal year be delayed.  This request to defer wage increases for AFSCME members comes as BCPS is reassigning and cutting staff to address its budget shortfall.

21. Maryland schools also face the potential loss of competitive Department of Education grants.  For example, Anne Arundel County Public Schools, which employs AFSCME Council 3 members, lost a competitive grant of over $240,000 from the Department of Education.

22. AFSCME Council 3 members also rely on Federal Student Aid programs administered by the Department of Education. Numerous Council 3 members have taken out student loans to fund their educations.  Some of these members are in the process of loan repayment and rely on loan repayment programs to be able to afford their student loan payments amid other living expenses.

23. AFSCME Council 3 members have their dues deducted out of their paychecks each month, so AFSCME Council 3 will also receive decreased amounts in dues from its membership each month due to lost bargaining unit positions and should layoffs result from the massive budgetary shortfalls in Maryland school districts, including at Title 1 schools. The threatened loss of dues revenue is another practical harm to the union because the organization relies on dues to perform critical representational work for our members every day.

24. Lastly, a shrinking bargaining unit will only reduce the strength of AFSCME Council 3 at the bargaining table where we negotiate wages, benefits, and other terms and conditions of employment for our members and their entire bargaining unit of public school employees, be they paraprofessionals who directly support disabled students and bus drivers who transport children, or cafeteria workers and janitors who keep students in Maryland schools fed and their schools clean.

25. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed at Washington, District of Columbia on the 24th day of June, 2025

Patrick Moran