# Exhibit UU

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> THE UNITED STATES OF AMERICA, et al., <br><br> *Defendants*. | Civil Action No. 25-965-JRR |

## **DECLARATION OF MATT NOSANCHUK**

I, Matt Nosanchuk, declare pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am a resident of the District of Columbia. I am over the age of 18 and have personal knowledge of all the facts stated herein. If called as a witness, I could and would testify competently to the matters set forth below.

2. I was appointed by the Biden Administration in 2023 to serve as the Deputy Assistant Secretary for Strategic Operations and Outreach at the U.S. Department of Education's Office for Civil Rights ("OCR").

3. I hold a bachelor's degree in history with honors and a law degree from Stanford University. I was a Truman Scholar.

4. I submit this declaration in response to actions taken by the Trump Administration, Department of Education ("the Department"), and Secretary of Education to dismantle the Department, such that the Department, on information and belief, has been incapacitated and is now unable to meet statutory obligations that are critical to the implementation and enforcement

of civil rights laws across hundreds of thousands of schools, colleges, and universities in all fifty states.

5. OCR was established pursuant to 20 U.S.C. § 3413 and is administered by the Assistant Secretary for Civil Rights.

6. As OCR's Deputy Assistant Secretary for Operations and Outreach, I worked closely with the policy and enforcement teams on outreach and public engagement related to OCR's work. I ensured that stakeholders, communities, and advocates who rely on the Department knew and understood the resolution agreements that OCR entered into and policy guidance that OCR published. I was also responsible within OCR for engagement with Congress, other units within the Department, other offices within the Administration, and the White House.

7. I supervised the Outreach, Prevention, Education and Non-discrimination ("OPEN") Center, aimed at supporting schools, educators, students and families in proactively complying with federal nondiscrimination laws. The first Trump administration launched the OPEN Center January 2020 with the purpose of increasing transparency into OCR's efforts. OCR, *Annual Report to the Secretary, the President, and the Congress* (Jan. 2021), https://www.ed.gov/sites/ed/files/about/reports/annual/ocr/report-to-president-and-secretary-of-education-2020.pdf. The OPEN Center included two offices—Customer Service and Freedom of Information Act ("FOIA")—and had approximately 17 employees. The FOIA team reviewed headquarters-level FOIA requests, handled responses to those requests, worked with the Department's FOIA Service Center and developed related policies and practices for OCR's regional offices, which had been on delegated to the authority to respond to incoming FOIA requests. The Customer Service office staffed an email inbox (ocr@ed.gov), that received thousands of e-mail inquiries, complaints, and other questions, including inquiries from Congress.

One of the most important responsibilities of the OPEN Center was to assist members of the public with filing complaints with OCR. On information and belief, as of March 11, 2025, the OPEN Center has been abolished and all employees who staffed that office either voluntarily resigned or have been eliminated. The elimination of the OPEN Center has a significant impact on the public's ability to file meaningful complaints with OCR and resolve discrimination in schools across the country.

8. Section 203(b)(1) of the Department of Education Organization Act of 1979, Pub. L. No. 96–88, provides: "The Assistant Secretary for Civil Rights shall make an annual report to the Secretary, the President, and the Congress summarizing the compliance and enforcement activities of the Office for Civil Rights and identifying significant civil rights or compliance problems as to which such Office has made a recommendation for corrective action and as to which, in the judgment of the Assistant Secretary, adequate progress is not being made." 20 U.S.C. § 3413(b)(1). I was responsible for ensuring that OCR met its statutory annual reporting obligations, and I was the principal drafter of annual reports to Congress and the President. The annual reports accurately described OCR's activities from the previous fiscal year, including the number of complaints received, types of cases, resolutions reached, descriptions of technical assistance and other outreach, and civil rights data collection. OCR, *Annual Reports* (Jan. 16, 2025), https://www.ed.gov/about/ed-offices/ocr/serial-reports-regarding-ocr-activities.

9. The Government Performance and Results Act of 1993 ("GPRA") requires that federal agencies publicly publish a strategic plan that includes "general goals and objectives, including outcome-oriented goals, for the major functions and operations of the agency." 5 U.S.C. § 306(a)(2). The Government Performance and Results Modernization Act of 2010 ("GPRMA") (Pub. L. No. 111-352) is an update to the GPRA (Pub. L. No. 103-62) and provides the legal basis

for the Department's Strategic Plan, including its strategic goals and objectives. I was responsible for developing annual goals based on Strategic Objective 1.3 of the Department's Strategic Plan for the Fiscal Years 2022-2026, which was to "[s]upport states, school districts, and institutions of higher education to promote and protect students' nondiscriminatory and equal access to education, as provided by Federal civil rights laws." U.S. Dep't of Educ., *Fiscal Years 2022-2026 Strategic Plan* 98, https://www.ed.gov/sites/ed/files/about/reports/strat/plan2022-26/strategic-plan.pdf (last visited May 15, 2025). OCR submitted its goals to the Office of Management and Budget and to Congress. To the best of my recollection, the metrics included information such as the number of policy resources that OCR committed to issue during the reporting period and the number of compliance reviews OCR committed to open. Regional offices were required to submit weekly reports to the Head Office reflecting their numbers. Through the strategic planning process, OCR made a commitment pursuant to a statutory mandate, which Congress has every reason to expect will be fulfilled. The massive cuts to OCR will cripple OCR's ability to fulfill its objectives, in complete disregard of OCR's commitments to Congress and the public.

10. OCR's decimation leaves millions of students with no effective access to civil rights enforcement. There is no other office in the federal government, including the U.S. Department of Justice, which has the mandate or staffing to ensure that students' civil rights are enforced. Nor are there offices at the state level who can effectively fill the gap and enforce student civil rights and ensure equal access to education and compliance with civil rights laws. This means that children with disabilities have nobody to go to if their school fails to provide appropriate accommodations; race discrimination will occur without consequence; girls experiencing sex-based harassment will have to continue to endure unlawful treatment; and girls' sports teams may have no means to demand equal facilities. It has been widely reported that the Department closed

seven of OCR's regional enforcement offices. The closure of those offices means that significant expertise has been lost, including in connection with the areas that the administration purports to prioritize, such as Title VI enforcement in cases of antisemitic harassment. All students are less safe and less protected without OCR standing up for them.

11. To the extent that OCR continues to operate, its focus has been dramatically narrowed, and its work has been weaponized against diversity, equity, inclusion, and accessibility ("DEIA"), and a broad definition of antisemitism that sweeps in speech that is protected by the first amendment, conflates legitimate criticism of the policies of the Israeli government with antisemitic discrimination that violates Title VI. This narrowing and politicization of OCR's work reflects a dramatic alteration of the scope and nature of the work done by OCR. The investigations that OCR has publicized since January of 2025 consist almost entirely of "directed investigations," meaning investigations that the leadership of OCR and/or others in the Trump administration instigated rather than investigations in response to parents and student complaints filed with OCR. The Department's new approach to directed investigations bears no resemblance to the OCR process. Under the Trump Administration, schools have been deemed to be in violation of Title VI based upon press reports of individual incidents rather than over the course of an investigation to determine whether the evidence supports a determination that the antisemitism alleged rises to the level of harassment or hostile environment in violation of Title VI. The change in penalties has also been dramatic—schools are being punished by withholding huge amounts of federal funds without going through the established process for withholding funds.

12. I understand that there has been some discussion that OCR's caseload could be transferred to the U.S. Department of Justice. Based on my experience, the Department of Justice will be unable to assume responsibility for OCR's work because it does not have the personnel,

bandwidth, or relationships with schools to offer technical assistance, policy guidance, or investigate and resolve the volume of complaints that OCR receives. On information and belief, the staff of the Civil Rights Division at the Department of Justice had been dramatically reduced in the past several months, further increasing the challenge of transitioning OCR's case load to that office.

I declare under penalty of perjury under the laws of the United States that, to the best of my knowledge, the foregoing is true and correct.

    Executed on June 13, 2025.

_____
Matt Nosanchuk

7