# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| NAACP, et al.,<br><br>  Plaintiffs,<br><br>         v.<br><br>UNITED STATES, et al.,<br><br>  Defendants. | Case No. 1:25-cv-00965-JRR<br><br>Judge Julie Rubin |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

BACKGROUND ................................................................................................................... 2

I.      Background ................................................................................................................ 2

II.     Procedural History .................................................................................................... 2

LEGAL STANDARDS ......................................................................................................... 3

ARGUMENT ........................................................................................................................ 4

I.      The Supreme Court's decisions in *California v. McMahon* and *New York v. McMahon* Warrant Dismissal of this Lawsuit ........................................................... 4

II.     The Court Lacks Jurisdiction Over Plaintiffs Claims. ............................................. 6

        A.      Plaintiffs Fail to Adequately Allege Standing (All Counts) ......................... 6

        B.      Any RIF-Related Claims Must Be Channeled Under the the CSRA (All Counts) .......................................................................................................... 8

        C.      Any Grant or Contract Cancellation-Related Claims Must Be Channeled Under the Tucker Act (All Counts) ............................................................. 12

        D.      Plaintiffs' APA Claims Fail Because They Do Not Seek Judicial Review of a Discrete Final Agency Action. (Count IV) .......................................... 17

        E.      Closure-Related Claims Must Be Dismissed as Not Ripe (Counts I, III-V) ........ 20

III.    Plaintiffs Fail to State a Claim Upon Which Relief Can Be Granted. .............................. 21

        A.      Plaintiffs' Fail to State Constitutional Claims (Counts I-III, V) .......................... 21

        B.      Plaintiffs APA Claims Should be Dismissed Because the Department's Administrative Functions Are Committed to Agency Discretion (Count IV) .......................................................................................................... 26

        C.      Plaintiffs' APA Claims Should be Dismissed Because There Are Adequate Alternative Remedies Available (Count IV) ............................................. 28

CONCLUSION .................................................................................................................... 28

i

## TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*Abbott Lab'ys v. Gardner*,
  387 U.S. 136 (1967), *abrogated by*, *Califano v. Sanders*, 430 U.S. 99 (1977)........................ 20

*Alabama-Coushatta Tribe of Tex. v. United States*,
  757 F.3d 484 (5th Cir. 2014) .................................................................................................. 17

*Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*,
  357 F.3d 62 (D.C. Cir. 2004) .................................................................................................. 14

*Am. Ass'n of Colls. for Tchr. Educ. v. McMahon*,
  No. 25-1281, 2025 WL 1232337 (4th Cir. Apr. 10, 2025) ...................................................... 16

*Am. Educ. Rsch. Ass'n v. Dep't of Educ.*,
  No. SAG-25-123025-1230, 2025 WL 1665401 (D. Md. June 12, 2025) ...................... 8, 19, 20

*Am. Fed'n of Gov't Emps. v. Sec'y of Air Force*,
  716 F.3d 633 (D.C. Cir. 2013) ................................................................................................ 11

*Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*,
  929 F.3d 748 (D.C. Cir. 2019) ................................................................................... 8, 9, 10, 11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................................................... 4

*Ass'n for Educ. Fin. & Pol'y, Inc. v. McMahon*,
  --- F. Supp. 3d ----, 2025 WL 1568301 (D.D.C. June 3, 2025).............................................. 20

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................................ 3, 4

*Block v. Cmty. Nutrition Inst.*,
  467 U.S. 340 (1984)............................................................................................................ 11, 12

*Bowen v. Massachusetts*,
  487 U.S. 879 (1988)................................................................................................................. 28

*Brown v. Mass Transit Admin.*,
  CIV. A. No. ELH-12-3705, 2013 WL 1428527 (D. Md. Apr. 8, 2013) ..................................... 3

*Buchanan v. Consol. Stores Corp.*,
  125 F. Supp. 2d 730 (D. Md. 2001) ........................................................................................... 3

*Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp.*,
   333 U.S. 103 (1948) ............................................................................................ 24

*Child Trends, Inc. v. U.S. Dep't of Educ.*,
   --- F. Supp. 3d ----, 2025 WL 1651148 (D. Md. June 11, 2025) .............................. 16

*City of New York v. U.S. Dep't of Def.*,
   913 F.3d 423 (4th Cir. 2019) ......................................................................... 17, 21

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) .............................................................................................. 6

*Clinton v. Jones*,
   520 U.S. 681 (1997) ............................................................................................ 24

*Cobell v. Kempthorne*,
   455 F.3d 301 (D.C. Cir. 2006) ............................................................................ 17

*Consol. Edison Co. of N.Y. v. U.S. Dep't of Energy*,
   247 F.3d 1378 (Fed. Cir. 2001) ........................................................................... 15

*Dalton v. Specter*,
   511 U.S. 462 (1994) ..................................................................................... 22, 24

*Department of Education v. California*,
   604 U.S. 650 (2025) ...................................................................... 4, 13, 15, 16

*Doe v. Va. Dep't of State Police*,
   713 F.3d 745 (4th Cir. 2013) ............................................................................... 21

*Drake v. FAA*,
   291 F.3d 59 (D.C. Cir. 2002) .............................................................................. 26

*Elgin v. Dep't of Treasury*,
   567 U.S. 1 (2012) ..................................................................................... 9, 10, 11

*Ernst & Young v. Depositors Econ. Prot. Corp.*,
   45 F.3d 530 (1st Cir. 1995) ................................................................................. 20

*FDA v. All. for Hippocratic Med.*,
   602 U.S. 367 (2024) .............................................................................................. 6

*Fed. Express Corp. v. U.S. Dep't of Com.*,
   39 F.4th 756 (D.C. Cir. 2022) ....................................................................... 23, 26

*Fed. Power Comm'n v. Transcon. Gas Pipe Line Corp.*,
   423 U.S. 326 (1976) ............................................................................................ 26

iii

*Fed. Trade Comm'n v. Standard Oil Co. of Cal.*,
   449 U.S. 232 (1980) ................................................................................. 21

*Filebark v. U.S. Dep't of Transp.*,
   555 F.3d 1009 (D.C. Cir. 2009) ............................................................... 10

*Fornaro v. James*,
   416 F.3d 63 (D.C. Cir. 2005) ................................................................... 10

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
   561 U.S. 477 (2010) ................................................................................. 24

*Graham v. Ashcroft*,
   358 F.3d 931 (D.C. Cir. 2004) ................................................................... 8

*Great-West Life & Annuity Ins. Co. v. Knudson*,
   534 U.S. 204 (2002) ................................................................................. 15

*Heckler v. Chaney*,
   470 U.S. 821 (1985) ............................................................... 24, 25, 27, 28

*Holley v. United States*,
   124 F.3d 1462 (Fed. Cir. 1997) ............................................................... 14

*Hollingsworth v. Perry*,
   558 U.S. 183 (2010) ................................................................................... 6

*In re James R. Jones, House of Representatives*,
   B-203057 L/M, 1981 WL 23385 (Comp. Gen. Sep. 15, 1981) ................ 23

*Kerns v. United States*,
   585 F.3d 187 (4th Cir. 2009) ..................................................................... 3

*Kidwell v. Dep't of Army, Bd. for Corr. of Mil. Recs.*,
   56 F.3d 279 (D.C. Cir. 1995) ................................................................... 13

*Lincoln v. Vigil*,
   508 U.S. 182 (1993) ............................................................... 26, 27, 28

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ................................................................................. 23

*Lujan v. Nat'l Wildlife Fed'n*,
   497 U.S. 871 (1990) ........................................................................... 17, 18

*Mahoney v. Donovan*,
   721 F.3d 633 (D.C. Cir. 2013) ................................................................. 10

*Markland v. Off. of Pers. Mgmt.*,
  140 F.3d 1031 (Fed. Cir. 1998) ................................................................. 26

*Maryland  v. U.S. Dep't of Agric.*,
  No. 25-1248, 2025 WL 1073657 (4th Cir. Apr. 9, 2025) ........................... 10

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
  567 U.S. 209 (2012) ................................................................................... 13

*McMahon v. New York*,
  606 U.S. ----, 145 S. Ct. 2643 (2025) ......................................................... 5

*Megapulse, Inc. v. Lewis*,
  672 F.2d 959 (D.C. Cir. 1982) .................................................................... 14

*Mississippi v. Johnson*,
  71 U.S. (4 Wall.) 475 (1866) ....................................................................... 23

*Morrison v. Olson*,
  487 U.S. 654 (1988) .................................................................................... 24

*Nat'l Ass'n of Agric. Emps. v. Trump*,
  462 F. Supp. 3d 572 (D. Md. 2020) ....................................................... 9, 11

*National Institutes of Health v. American Public Health Association*,
  606 U.S. ----, 145 S. Ct. 2658 (2025) ...................................................... 4, 16

*Nat'l Treasury Emps. Union v. Trump*,
  770 F. Supp. 3d 1 (D.D.C. 2025) ................................................................ 11

*Nat'l Treasury Emps. Union v. Voug*ht,
  --- F.4th ----, 2025 WL 2371608 (D.C. Cir. Aug. 15, 2025) .................. 19, 20, 23, 26

*New York v. McMahon*,
  --- F. Supp. 3d ----, 2025 WL 1463009 (D. Mass. May 22, 2025),
  *appeal filed,* No. 25-1495 (1st Cir. May 22, 2025). ..................................... 5

*Norton v. S. Utah Wilderness All.*,
  542 U.S. 55 (2004) .......................................................................... 17, 18, 19

*Nyunt v. Chairman, Broad. Bd. of Governors*,
  589 F.3d 445 (D.C. Cir. 2009) ............................................................. 10, 23

*Ohio Forestry Ass'n v. Sierra Club*,
  523 U.S. 726 (1998) .................................................................................... 21

*Perry Cap. LLC v. Mnuchin,*
    864 F.3d 591 (D.C. Cir. 2017) ........................................................... 14

*Printz v. United States,*
    521 U.S. 898 (1997) ........................................................................... 24

*Reno v. Cath. Soc. Servs., Inc.,*
    509 U.S. 43 (1993) ............................................................................. 20

*Spectrum Leasing Corp. v. United States,*
    764 F.2d 891 (D.C. Cir. 1985) ..................................................... 15, 25

*Sols. in Hometown Connections v. Noem,*
    No. 25-CV-00885-LKG, 2025 WL 1530318 (D. Md. May 29, 2025)................... 16

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998) ............................................................................... 3

*Sustainability Inst. v. Trump,*
    No. 25-1575, 2025 WL 1587100 (4th Cir. June 5, 2025) ................. 16, 25

*Texas v. United States,*
    523 U.S. 296 (1998) ........................................................................... 21

*Thunder Basin Coal Co. v. Reich,*
    510 U.S. 200 (1994) ....................................................................... 9, 11

*Toilet Goods Ass'n v. Gardner,*
    387 U.S. 158 (1967 ) .......................................................................... 21

*TransUnion LLC v. Ramirez,*
    594 U.S. 413 (2021) ............................................................................. 6

*Trump v. CASA, Inc.,*
    606 U.S. 831 (2025) ............................................................................. 6

*Tucson Airport Auth. v. Gen. Dynamics Corp.,*
    136 F.3d 641 (9th Cir. 1998) ............................................................. 15

*United States v. Fausto,*
    484 U.S. 439 (1988).............................................................. 9, 10, 11, 12

*United States v. J & E Salvage Co.,*
    55 F.3d 985 (4th Cir. 1995) ............................................................... 14

*United States v. Nixon,*
    418 U.S. 683 (1974)............................................................................. 25

*Up State Fed. Credit Union v. Walker*,
   198 F.3d 372 (2d Cir. 1999) .................................................................... 15, 25

*Vill. of Bald Head Island v. U.S. Army Corps. of Eng'rs*,
   714 F.3d 186 (4th Cir. 2013) ......................................................................... 17

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
   435 U.S. 519 (1978) ................................................................................ 26, 27

**Statutes**

5 U.S.C. § 701 ............................................................................................... 26, 27

5 U.S.C. § 702 ..................................................................................................... 13

5 U.S.C. § 704 ..................................................................................................... 28

5 U.S.C. § 1204 ..................................................................................................... 9

5 U.S.C. § 7105 ..................................................................................................... 9

5 U.S.C. § 7123 ..................................................................................................... 9

5 U.S.C. § 7512 ..................................................................................................... 9

5 U.S.C. § 7701 ..................................................................................................... 9

5 U.S.C. § 7703 ..................................................................................................... 9

7 U.S.C. § 608c ................................................................................................... 11

28 U.S.C. § 1295 ................................................................................................... 9

28 U.S.C. § 1331 ................................................................................................... 8

28 U.S.C. § 1346 ................................................................................................. 13

28 U.S.C. § 1491 ................................................................................................. 13

Further Consolidated Appropriations Act,
   Pub. L. No. 118-47, 138 Stat. 460 (2024) .................................................... 27

Full-Year Continuing Appropriations and Extensions Act,
   Pub. L. No. 119-4, 139 Stat. 9 (2025) ........................................................... 27

**Rules**

Federal Rule of Civil Procedure 12 ................................................................................... 3

**Regulations**

5 C.F.R. § 2423.22 ................................................................................................. 9, 12

34 C.F.R. § 75.1 ........................................................................................................ 28

**Other Authorities**

170 Cong. Rec. H1501 (daily ed. Mar. 22, 2024) ......................................................... 27

S. Rep. No. 118-84 ..................................................................................................... 27

## INTRODUCTION

Labor unions, individual plaintiffs, and civil rights organizations cannot bring claims in a federal district court to challenge how an agency manages its headcount, its internal operations, or its grant programs. Yet that is what Plaintiffs here seek to do in this sprawling lawsuit challenging various recent actions at the Department of Education ("Department"). Plaintiffs' claims should be dismissed either for lack of subject matter jurisdiction or for failure to state a claim upon which relief can be granted.

Plaintiffs lack standing – they stand far downstream from any agency action implicated in this case, and many of the harms they allege are caused by third parties who are reacting to "uncertainties" allegedly created by the Department.  Any challenge to the "closure" of the Department is unripe and fails the Administrative Procedure Act's ("APA") bar against broad, programmatic attacks.  Any challenge to the Reductions-In-Force ("RIF") must be channeled through the Civil Service Reform Act ("CSRA").  Any challenge to the grant and contract cancellations must be channeled under the Tucker Act.  Plaintiffs are then left with constitutional challenges that merely reiterate and allege that the Department has not fulfilled its statutory duties, but these sorts of statutory "constitutional" claims are restricted to extreme error— something that is absent here.

"[I]n place of every weed pulled, another grows." Mem. Op. at 36, ECF No. 86. Plaintiffs' Amended Complaint is rife with jurisdictional and legal errors and, where framing their complaint one way may solve one jurisdictional or legal issue, it only exacerbates another jurisdictional or legal issue.  Taking their Amended Complaint as a challenge to a "closure" of the Department, Plaintiffs impermissibly make a programmatic challenge that is disallowed under the APA and should be dismissed.  But framed as a challenge to the numerous actions

taken by the Department to date in streamlining Department functions – such as the RIFs, the contract cancellations, and the grant cancellations – Plaintiffs struggle to establish standing for each and every action, or to show that these actions should not be channeled through the appropriate statutory scheme.  Accordingly, Plaintiffs claims should be dismissed.

## BACKGROUND

### I.    Background

The parties have previously briefed the statutory and factual background, and Defendants refer to their first motion to dismiss for the full factual background. *See* Defs.' Mem. of Law in Supp. of their Mot. to Dismiss & in Opp'n to Pls.' Mot. for a Prelim. Inj. at 2-8, ECF No. 78 ("First MTD").

### II.    Procedural History

Plaintiffs filed a Complaint on March 24, 2025, and then an Amended Complaint on July 1, 2025. The Amended Complaint includes five counts. Count One requests a declaratory judgment and a permanent injunction regarding the March 20 Executive Order, based on an alleged violation of the Take Care Clause. First Am. Compl. ¶¶ 149-53, ECF No. 58 ("Am. Compl."). Count Two requests the same relief and alleges that Secretary McMahon "unlawful[ly] impound[ed] . . . the Department's congressionally appropriated funds" in violation of the Appropriations Clause. *Id*. ¶¶ 154-58. Count Three also requests the same relief, alleging a violation of the Separation of Powers based on the March 20 Executive Order and Secretary McMahon's implementation of that same Order. *Id*. ¶¶ 159-61. Count Four invokes the APA and claims that "Defendants' dismantling of the Department" is contrary to law and is arbitrary and capricious. *Id*. ¶¶ 162-67. Finally, in Count Five, Plaintiffs seek *ultra vires* review of "Defendants' dismantling of the Department." *Id*. ¶¶ 168-71.

Plaintiffs filed a motion for a preliminary injunction and memorandum in support on July 1, 2025. Pls.' Mot. for Prelim. Inj., ECF No. 61; Pls.' Mem. in Supp. of Mot. for Prelim. Inj., ECF No. 61-1 ("PI"); Proposed Order, ECF No. 61-2. Defendants responded and also moved to dismiss on July 25, 2025. Defs.' Mot. to Dismiss, ECF No. 77; First MTD; Defs.' Reply in Supp. of their Mot. to Dismiss, ECF No. 84.

On August 19, 2025, the Court denied Plaintiffs' motion for a preliminary injunction and administratively denied Defendants' motion to dismiss without prejudice. *See* Mem. Op. The Court invited Defendants to file a renewed motion to dismiss within 30 days following entry of the Court's order. *Id.* at 39.

## LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(1), Plaintiffs bear the burden to establish subject matter jurisdiction, and the Court must determine whether it has jurisdiction before addressing the merits. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95, 104 (1998). A test of subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": (i) a facial challenge, "asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction"; or (ii) a factual challenge, "asserting 'that the jurisdictional allegations of the complaint [are] not true,' or that other facts, outside the four corners of the complaint, preclude the exercise of subject matter jurisdiction." *Brown v. Mass Transit Admin.*, CIV. A. No. ELH-12-3705, 2013 WL 1428527, at *2 (D. Md. Apr. 8, 2013) (Hollander, J.) (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009), and citing *Buchanan v. Consol. Stores Corp.*, 125 F. Supp. 2d 730, 736 (D. Md. 2001)).

Under Rule 12(b)(6), a court should grant a motion to dismiss if the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

## ARGUMENT

### I.    The Supreme Court's decisions in *California v. McMahon* and *New York v. McMahon* Warrant Dismissal of this Lawsuit

In *National Institutes of Health v. American Public Health Association* ("*NIH*")*,* Justice Gorsuch reminded lower courts to give a Supreme Court decision on interim relief precedential weight. 606 U.S. ----, 145 S. Ct. 2658, 2665 (2025) (mem.). This case followed on the heels of *Department of Education v. California,* 604 U.S. 650 (2025), which granted a stay of a preliminary injunction on the termination of Department of Education grants. In *California*, the Court found that "the Government is likely to succeed in showing the District Court lack[s] jurisdiction to order the payment of money under the APA" because the APA's waiver of immunity does not apply to claims for money damages or where another statute forbids the relief sought. *Id.* at 651.

In *NIH*, Justice Gorsuch's concurrence affirmatively stated that *Department of Education v. California*, despite being a decision regarding interim relief, should still carry precedential weight with respect to its reasoning. 145 S. Ct. at 2663-64 (Gorsuch, J., concurring). And Justice Gorsuch noted that "even probabilistic holdings—such *as California*'s top-line conclusion that 'the Government is likely to succeed in showing the District Court lacked jurisdiction to order the payment of money under the APA,' must 'inform how a [lower] court' proceeds 'in like cases,'" *Id.* at 2664 (Gorsuch, J., concurring) (citations omitted).

Accordingly, *California* – which dealt with many of the same grants at issue here – squarely controls.  Plaintiffs cannot bring an APA action to compel the payment of money under the APA, and this Court should dismiss the contract- and grant-related claims on this basis alone.

Similarly, the Supreme Court entered a stay in *McMahon v. New York,* 606 U.S. ----, 145 S. Ct. 2643 (2025) (mem.).  Like the Plaintiffs here, the plaintiffs in *McMahon* alleged that the RIFs across the entire Department were not only unlawful, but were also so severe and sweeping that they were an impermissible step toward dismantling the Department in its entirety. *New York v. McMahon*, --- F. Supp. 3d ----, 2025 WL 1463009, at *2 (D. Mass. May 22, 2025), *appeal filed,* No. 25-1495 (1st Cir. May 22, 2025). And much like the Plaintiffs here, the plaintiffs in *McMahon* alleged the RIFs violated the Constitution's Separation of Powers doctrine, violated the Take Care Clause of the Constitution, was ultra vires, and violated the Administrative Procedure Act ("APA") because they were contrary to law and arbitrary and capricious. *Id.*

In support of its request for a stay, the Government presented both threshold jurisdictional arguments as well as merits arguments to the Supreme Court. Specifically, the Government argued that plaintiffs lacked any non-speculative harm to support Article III standing, that the Civil Service Reform Act ("CSRA") is the exclusive means for challenging federal personnel actions, that the injunction exceeds courts' traditional remedial authority, and that the court-ordered the reinstatement of nearly 1400 employees is not a remedy traditionally available in equity. Appl. to Stay the Inj. Issued by the U.S. District Ct. for the District of Massachusetts & Req. for an Immediate Administrative Stay at 14, *McMahon v. New York*, No. 24A1203 (U.S. June 6, 2025). As to the remaining injunction factors, the Government argued that the district court's preliminary relief irreparably harmed the Executive Branch and that the balance of the equities and the public interest both cut in Defendants' favor. *Id.*

By granting Defendants' stay request, the Supreme Court necessarily accepted Defendants' arguments. *See, e.g., Trump v. CASA, Inc.*, 606 U.S. 831, 841 (2025) (citing Nken factors and noting for a stay application to be granted, the applicant must make "a strong showing that [it] is likely to succeed on the merits") (citation omitted); *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (weighing injunctive factors and granting stay pending appeal). The arguments the Supreme Court accepted are similar to the arguments presented here to dismiss this Plaintiffs' claims. Accordingly, this Court should dismiss Plaintiffs' claims.

## II.    The Court Lacks Jurisdiction Over Plaintiffs Claims.

### A.    Plaintiffs Fail to Adequately Allege Standing (All Counts)

As a threshold matter, Plaintiffs have failed to demonstrate standing. To establish Article III standing, a plaintiff must show that it has suffered a judicially cognizable injury that is fairly traceable to the defendant and likely redressable by judicial relief. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *Id.* at 431. The alleged injury in fact cannot be "speculative—meaning that the injury must have already occurred or be likely to occur soon." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). If the injury has not materialized, it must be "*certainly impending,*" and "[a]llegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation omitted). Plaintiffs advance various harms allegedly due to the actions of the Department. They can be roughly separated into two categories, overly speculative harms and overly attenuated harms.

First up are the speculative harms. Plaintiffs allege that they will be harmed by a lack of oversight at the FSA (Am. Compl. ¶ 89), that they are harmed by OCR investigations pausing (Am. Compl. ¶ 97), or that the RIF will generally lead to a degradation of services (*see, e.g.,* Am. Compl.

¶ 44). But it is merely speculative that Plaintiffs will suffer any of these harms. Lack of oversight at the FSA will only harm Plaintiffs if, and only if, there is some action taken by a third party that hurts Plaintiffs that, but for oversight by the FSA, would not happen. That is overly speculative. Similarly, Plaintiffs' harm from a stalled OCR investigation speculates that the OCR investigation would be decided in their favor, or that the Executive would use its discretion to investigate their complaints. The nature of these harms are too speculative to support jurisdiction. Reinforcing the speculative and non-imminent nature of Plaintiffs' harms, the Department's employees have been on administrative leave since March (now finally separated except OCR employees who, per a preliminary injunction, have been returning to work status), yet there are no concrete allegations of the harm actually suffered by Plaintiffs due to the RIF. The amount of time that has passed between the Department's actions and the yet unfulfilled predictions of harm shows Plaintiffs' harms are purely speculative.

Next are Plaintiffs' attenuated harms: Plaintiffs' members lost positions because IES contracts are cancelled (Am. Compl. ¶ 72), lost access to REL-grantee resources (Am. Compl. ¶ 73), lost access to programs funded by grants (Am. Compl. ¶ 140), and lost positions because school districts have cut jobs and services based on uncertainty (Am. Compl ¶ 115). Many of these harms have resulted due to a third party acting based on an uncertainty, and this Court has previously expressed "serious concerns regarding, at the very least, causal connection and redressability" when the harm flows from actions by a third party acting on "uncertainty." Mem. Op. at 35 n.26. Plaintiffs grant- and contract-related attenuated harms all flow from a third party – a grantee or contractee – losing its grant or contract and then, having lost that source of income, chosen to not furnish Plaintiffs with a benefit. But this was a choice made by the third party. And should the Plaintiffs ultimately prevail on their claims, it is by no means certain that these harms

will be redressed – the contractee or grantee may not want to participate in the program, or they may not use the funds received to provide the benefits that Plaintiffs allege that they have lost.

Separately, Plaintiffs lack standing to enforce the rights of nonparties. As this Court noted, "Plaintiffs are not parties to IES or competitive grant award contracts" and "people who are not party to a contract (or a third-party beneficiary) do not have standing to sue based on the contract." *Id.* at 35 (quoting *Am. Educ. Rsch. Ass'n v. Dep't of Educ.* ("*AERA*"), CIV. Case No. SAG-25-1230, 2025 WL 1665401, at *5 (D. Md. June 12, 2025)). Neither Plaintiffs nor their members were ever the recipients of those grants and contracts. Plaintiffs, who have the burden, fail to demonstrate that they have standing to demand payments to a non-party.

### B. Any RIF-Related Claims Must Be Channeled Under the the CSRA (All Counts)

Even if Plaintiffs have Article III standing, this Court lacks jurisdiction to adjudicate Plaintiffs' challenges to the employment decisions of federal agencies. Although district courts have jurisdiction over civil actions arising under federal law, *see* 28 U.S.C. § 1331, "Congress may preclude district court jurisdiction by establishing an alternative statutory scheme for administrative and judicial review." *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump ("AFGE")*, 929 F.3d 748, 754 (D.C. Cir. 2019). As detailed below, Congress has precluded jurisdiction for the claims brought by Plaintiffs challenging the Department's RIFs.

The CSRA and the Federal Service Labor-Management Relations Statute ("FSL-MRS"), which is set forth in the CSRA, together provide a comprehensive "scheme of administrative and judicial review" for resolving both disputes between employees and their federal employers and disputes brought by unions representing those employees. *AFGE*, 929 F.3d at 752 (regarding FSL-MRS); *see Graham v. Ashcroft*, 358 F.3d 931, 933 (D.C. Cir. 2004) (regarding CSRA more

broadly). In passing the CSRA, Congress made the Merit Systems Protection Board[1] and Federal Labor Relations Authority ("FLRA")[2] the exclusive means for federal employees, labor unions, and other interested parties to raise challenges to final, non-discrimination-related, adverse employment actions. *See United States v. Fausto*, 484 U.S. 439, 455 (1988). CSRA channeling is required even when such disputes involve constitutional claims. *See Elgin v. Dep't of Treasury*, 567 U.S. 1, 10-15 (2012); *see also AFGE*, 929 F.3d at 752; *Nat'l Ass'n of Agric. Emps. v. Trump*, 462 F. Supp. 3d 572, 586 (D. Md. 2020) (adopting the reasoning of *AFGE*).

CSRA's channeling provisions preclude this Court's review of Plaintiffs' RIF claims. Everything about those claims, and the remedies Plaintiffs seek, derives from the relationship between the federal government and its employees, to which Plaintiffs and their members are strangers. Plaintiffs cannot step into the shoes of those employees and assert claims against the Department that the employees cannot themselves assert in federal district court, but instead must pursue before the FLRA or the MSPB.

In *AFGE*, the D.C. Circuit applied the "two-step framework set forth in" *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), to conclude that the union plaintiffs in that case could not challenge in district court three executive orders related to federal employment. *AFGE*, 929 F.3d at 754. Under that framework, district courts lack jurisdiction over suits like this one when the

---

[1] Congress established the MSPB to, among other things, hear employee appeals of final adverse actions as set out in 5 U.S.C. § 7512. *See* 5 U.S.C. § 1204(a)(1). The MSPB may order relief to prevailing employees, including reinstatement, backpay, and attorney's fees. *Id*. §§ 1204(a)(2), 7701(g). Employees may appeal adverse MSPB decisions to the Federal Circuit. *See id*. § 7703(b)(1)(A); *see also* 28 U.S.C. § 1295(a)(9).

[2] The FLRA was established by Congress as part of the FSM-LRS to conduct hearings and resolve complaints of unfair labor practices, *see* 5 U.S.C. § 7105(a)(2)(G). Direct review of the FLRA's decisions on unfair labor practice and negotiability issues is available in the courts of appeals. *See id*. § 7123(a). FLRA regulations are set out at 5 C.F.R. pt. 2420. Among other things, the regulations allow persons or organizations who show that the outcome of the proceeding is likely to directly affect their rights or duties to intervene. *See* 5 C.F.R. § 2423.22.

intent for exclusive review in the court of appeals is "(i) . . . fairly discernible in the statutory scheme, and (ii) the litigant's claims are of the type Congress intended to be reviewed within [the] statutory structure." *See id.* (citation omitted).

The Supreme Court repeatedly has held that the CSRA provides the exclusive means of redressing employment disputes involving federal employees. *See Elgin*, 567 U.S. at 10-15; *Fausto*, 484 U.S. at 455. In other words, Congress intended to make the FSL-MRS and CSRA the exclusive scheme, and they satisfy the first step of the two-step *Thunder Basin* framework. As to covered actions, beyond restricting judicial review of covered constitutional claims, the CSRA prevents district courts from deciding the merits of APA claims challenging an agency's "'systemwide' . . . policy interpreting a statute," its "implementation of such a policy in a particular case," *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009) (quoting *Fornaro v. James*, 416 F.3d 63, 67-69 (D.C. Cir. 2005)), or its decision to engage in "'a *type* of personnel action' the [CSRA] does not cover," *Mahoney v. Donovan*, 721 F.3d 633, 635-36 (D.C. Cir. 2013) (quoting *Filebark v. U.S. Dep't of Transp.*, 555 F.3d 1009, 1013 (D.C. Cir. 2009)).

That Plaintiffs have framed their alleged injury in constitutional terms does not allow them to sidestep CSRA's mandatory channeling regime. *See* PI at 22-31. *Cf. Maryland v. U.S. Dep't of Agric.*, No. 25-1248, 2025 WL 1073657, at *1 (4th Cir. Apr. 9, 2025) ("The Government is likely to succeed in showing the district court lacked jurisdiction over Plaintiffs' claims, and the Government is unlikely to recover the funds disbursed to reinstated probationary employees."). Were Plaintiffs' theory correct, downstream users of government services could always go directly to court to raise challenges to agency RIFs notwithstanding Congress's determination that the employees must themselves first pursue relief administratively. Courts have repeatedly rejected these sorts of end runs. In *Elgin*, the Supreme Court held that even if a federal employee was

raising constitutional claims, the CSRA imposes an "implied preclusion of district court jurisdiction[.]" 567 U.S. at 12. Similarly, in *AFGE*, numerous federal unions asserted broad constitutional and statutory challenges to a set of three Executive Orders. *See* 929 F.3d at 752. The D.C. Circuit held that the FLRA provided the exclusive avenue through which unions could bring their claims. *See id*. at 754-61 (citing *Thunder Basin Coal Co.*, 510 U.S. at 212-16); *Nat'l Ass'n of Agric. Emps.,* 462 F. Supp. 3d at 586 (adopting the reasoning of *AFGE v Trump*); *Am. Fed'n of Gov't Emps. v. Sec'y of Air Force*, 716 F.3d 633, 636-39 (D.C. Cir. 2013); *Nat'l Treasury Emps. Union v. Trump*, 770 F. Supp. 3d 1, 8-11 (D.D.C. 2025) (upholding channeling requirement and denying request for emergency relief).

Indeed, it would be odd if a stranger to the federal-employment relationship—such as Plaintiffs here—could raise claims in this Court that the affected federal employees cannot themselves raise. In fact, it would upend the entire structured process Congress set out in the exclusive statutory schemes of the CSRA and other employment statutes. The "exclusion" of Plaintiffs "from the provisions establishing administrative and judicial review for personnel action" of the type challenged here "prevents [Plaintiffs] from seeking review" under other provisions. *Fausto*, 484 U.S. at 455. When a comprehensive scheme of the sort at issue here permits review at the behest of some types of plaintiffs but not others, it implicitly precludes review by plaintiffs who are not authorized to bring claims.

For example, *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 347 (1984), considered a statute that permitted dairy handlers to obtain review of certain "market orders" after exhausting administrative remedies, but did not authorize review by anyone else. *See id.* at 346 (citing 7 U.S.C. § 608c). When a group of dairy consumers sought review of a marketing order, the Supreme Court explained that the statute omits a "provision for participation by consumers in any proceeding,"

and that "[i]n a complex scheme of this type, the omission of such a provision is sufficient reason to believe that Congress intended to foreclose consumer participation in the regulatory process." *Id.* at 347. Hence, the "structure of this Act indicates that Congress intended only producers and handlers, and not consumers, to ensure that the statutory objectives would be realized." *Id.* And the "restriction of the administrative remedy to handlers strongly suggests that Congress intended a similar restriction of judicial review of market orders." *Id.* Any other holding would facilitate circumvention of the comprehensive statutory scheme. *See id.* at 348.

The principles described in *Block* fully apply to the CSRA and other employment statutory schemes. *See Fausto*, 484 U.S. at 448 (applying *Block* to conclude that certain employees who lack CSRA appeal rights "should not be able to demand judicial review for the type of personnel action covered by that chapter"). Because Congress intentionally foreclosed judicial review by parties other than those to whom it specifically authorized to seek relief, Plaintiffs, who are not employees of the Department, certainly cannot challenge the Department's employment actions here.

This result does not foreclose the RIF from meaningful judicial review. The employees can seek review of the reduction-in-force. And to the extent the reduction-in-force may affect Plaintiffs' rights or duties, the regulations governing these types of actions would allow Plaintiffs the opportunity to intervene. *See* 5 C.F.R. § 2423.22. Even if Plaintiffs could not ultimately bring the claims they raise here, there is no rule that every Plaintiff must be able to bring every claim – these Plaintiffs may not be able to bring claims challenging this reductions-in-force in any court under this set of facts.

### C.   Any Grant or Contract Cancellation-Related Claims Must Be Channeled Under the Tucker Act (All Counts)

This Court lacks jurisdiction over this matter because Congress has specifically divested

federal courts of jurisdiction over matters like this one. In challenging the government's grant and contract terminations, Plaintiffs seek an order to enforce the government's contractual obligation to pay. All of Plaintiffs' grant- and contract-related relief is premised on contracts between the United States and nonparty educational entities. And each of Plaintiffs' grant- and contract-related claims is founded on the continued disbursement of funds. In short, Plaintiffs ask for specific performance of contractual agreements.

That triggers jurisdiction in the Court of Federal Claims under the Tucker Act, which provides that the "United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded" on "any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). The Tucker Act precludes relief under the APA or otherwise because the APA's waiver of sovereign immunity is limited to claims "seeking relief other than money damages," 5 U.S.C. § 702, and the APA does not apply "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought," *California*, 604 U.S. at 651 (quoting 5 U.S.C. § 702). This exception "prevents plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012). Moreover, Congress has by statute explicitly forbidden district court jurisdiction for such claims. 28 U.S.C. § 1346(a)(2) ("[T]he district courts shall not have jurisdiction of any civil action or claim against the United States founded upon any express or implied contract with the United States [unless it is for less than $10,000]."). In sum, by statute and by the United States' sovereign immunity, if this action is founded upon a contract with the United States, this Court must dismiss for lack of jurisdiction.

Plaintiffs raise self-styled constitutional, statutory, and regulatory, claims. But that is of no moment. Courts must look to the claims' "substance, not merely [their] form." *Kidwell v. Dep't of*

*Army, Bd. for Corr. of Mil. Recs.*, 56 F.3d 279, 284 (D.C. Cir. 1995). Thus, regardless of how a

claim is styled, a district court lacks jurisdiction if a case "is in 'its essence' contractual." *Perry*

*Cap. LLC v. Mnuchin*, 864 F.3d 591, 619 (D.C. Cir. 2017) (quoting *Megapulse, Inc. v. Lewis*, 672

F.2d 959, 968 (D.C. Cir. 1982)); *see also Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv.*

*Emp. Benefits Sys.*, 357 F.3d 62, 68 (D.C. Cir. 2004); *Holley v. United States*, 124 F.3d 1462, 1466

(Fed. Cir. 1997) ("The presence of a constitutional issue does not erase the jurisdiction of the Court

of Federal Claims based on a properly brought claim under the Tucker Act, or bar the court from

considering the constitutional issue in the course of determining whether the [challenged action]

was wrongful.").

To determine whether an action is "at its essence a contract action," this Court "make[s]

rational distinctions between actions sounding genuinely in contract and those based on truly

independent legal grounds." *United States v. J & E Salvage Co.*, 55 F.3d 985, 988 (4th Cir. 1995)

(quoting *Megapulse, Inc.*, 672 F.2d at 969-70). Both the source of the rights and the ultimate relief

sought point toward treating these claims as contract claims.

First, the source of the rights Plaintiffs assert are the grant and contract agreements

themselves. Specifically, Plaintiffs challenge the termination of grants and contracts under a

variety of theories, but all ultimately stem from contracts without which no claims would exist.

But for the grants, Plaintiffs and Plaintiffs members would not receive any benefits from REL's,

training opportunities, or resources.  And but for the cancellation of the grants, Plaintiffs and

Plaintiffs' members would not be able to bring allegations of harm.  Similarly, without the IES

contracts, Plaintiffs would not have a claim to bring to this Court that IES was not properly

collecting and analyzing data.

"Because the United States's obligation is in the first instance dependent on the contract,

these claims are contractually-based" and "the district court lacks jurisdiction under the Tucker Act." *Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 647 (9th Cir. 1998) (concluding that district court lacked jurisdiction under the Tucker Act over constitutional claim because it was contractually based). In other words, "it is likely that no cause of action would exist at all," in the absence of the contracts. *Up State Fed. Credit Union v. Walker*, 198 F.3d 372, 377 (2d Cir. 1999) (citation omitted). That Plaintiffs' claims could not "exist[] prior to and apart from rights created under the [agreements]" weighs sharply against district court jurisdiction. *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 894 (D.C. Cir. 1985)*; see also Consol. Edison Co. of N.Y. v. U.S. Dep't of Energy*, 247 F.3d 1378, 1385-86 (Fed. Cir. 2001) (directing court to transfer case asserting constitutional, including due process, claims to the Court of Federal Claims in a case sounding in contract).

The relief prong of the test weighs sharply against jurisdiction. Indeed, the Supreme Court recently explained that the type of relief sought here is in the heartland of the Tucker Act's bar. There, several plaintiffs brought a similar APA challenge to termination of federal grants related to DEI—with the caveat that those plaintiffs were asserting their own rights under their own contracts. *California*, 604 U.S. at 651-652.  The Court concluded that the lower court likely lacked jurisdiction because the remedy sought was ultimately an order to "enforce [the Government's] contractual obligation to pay money." *Id.* at 651 (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)). The contracts at issue in *California* were government grants awards – many of the same grants at issue in this action. *Id.* at 650. So the Court identified the contractual grant award, considered the remedy sought, and concluded jurisdiction was likely precluded.

Moreover, the Court saw no difference between jurisdiction over Plaintiffs' pre-termination claims and post-termination claims. A request to enjoin any future termination still seeks contractual money. *Id.* at 651 In fact, plaintiffs in *California* also sought "an injunction against further unlawful terminations" along with their request for reinstatement of already terminated grants. Opp'n to Appl. at 25, *U.S. Dep't of Educ. v. California*, No. 24A910 (U.S. Mar. 28, 2025). Tellingly, the Supreme Court stayed the injunction in full.

Plaintiffs' relief can fare no better than the *California* plaintiffs' request. "The only injury . . . stems from the government's denial of previously awarded discretionary grants. Accordingly, *California* controls." *NIH*, 145 S. Ct. at 2664 (Gorsuch, J. concurring); *accord Am. Ass'n of Colls. for Tchr. Educ. v. McMahon*, No. 25-1281, 2025 WL 1232337, at *1 (4th Cir. Apr. 10, 2025); *Sustainability Inst. v. Trump,* No. 25-1575, 2025 WL 1587100, at *1 (4th Cir. June 5, 2025); *Sols. in Hometown Connections v. Noem*, CIV. A. No. 25-CV-00885-LKG, 2025 WL 1530318, at *10 (D. Md. May 29, 2025). And as for the remedy, "[a]n order vacating the government's decision to terminate grants under the APA is in every meaningful sense an order requiring the government to pay those grants." *NIH*, 145 S. Ct. at 2664 (Gorsuch, J. concurring).

That Plaintiffs have styled their claims as constitutional claims does not prevent dismissal. The Fourth Circuit has concluded that constitutional claims do not change this calculus, as they were still subsumed by the contracts and foreclosed by Congress's statutory scheme. *See Sustainability Inst.*, 2025 WL 1587100, at *2; *accord Child Trends, Inc. v. U.S. Dep't of Educ.*, --- F. Supp. 3d ----, 2025 WL 1651148, at *7 (D. Md. June 11, 2025) (rejecting motion for preliminary injunction where "Plaintiffs br[ought] claims under the APA, as well as nonstatutory claims seeking equitable relief" because of Tucker Act preclusion).

D.    **Plaintiffs' APA Claims Fail Because They Do Not Seek Judicial Review of a Discrete Final Agency Action. (Count IV)**

Plaintiffs fail to satisfy the essential elements of their APA claims in Count Four because they are not petitioning for judicial review of a circumscribed and discrete agency action. Plaintiffs must plead "an identifiable action or event" and "direct [their] attack against some particular 'agency action' that causes [them] harm." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891, 899 (1990); *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004) (APA limits judicial review to "circumscribed, discrete agency actions"). These final agency actions must be "circumscribed [and] discrete." *Id.* The APA does not provide for "general judicial review of [an agency's] day-to-day operations," *Lujan*, 497 U.S. at 899, like "constructing a building, operating a program, or performing a contract," *Vill. of Bald Head Island v. U.S. Army Corps. of Eng'rs*, 714 F.3d 186, 193 (4th Cir. 2013). The APA thus contains "a prohibition on programmatic challenges," meaning "challenges that seek 'wholesale improvement' of an agency's programs by court decree." *Alabama-Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 490 (5th Cir. 2014) (citation omitted). "Because 'an on-going program or policy is not, in itself, a final agency action under the APA,' [a court's] jurisdiction does not extend to reviewing generalized complaints about agency behavior." *Cobell v. Kempthorne*, 455 F.3d 301, 307 (D.C. Cir. 2006) (citation omitted). The avoidance of such review reflects separation of powers concerns and seeks to prevent the "broad programmatic attack[s]" disfavored in agency review. *Norton*, 542 U.S. at 64; *see also City of New York v. U.S. Dep't of Def.*, 913 F.3d 423, 431 (4th Cir. 2019).

Plaintiffs' claims and present exactly the type of wholesale challenge that the APA forbids. They do not seek judicial review of a discrete agency action. Rather, they seek wholesale judicial review of Defendants' management of the Department of Education. In *Lujan*, the Supreme Court dispelled any notion that such a programmatic challenge can proceed under the APA:

> [I]t is at least entirely certain that the flaws in the entire "program"—consisting principally of the many individual actions referenced in the complaint, and presumably actions yet to be taken as well—cannot be laid before the courts for wholesale correction under the APA, simply because one of them that is ripe for review adversely affects [a plaintiff].

497 U.S. at 892-93.

Just as in *Lujan*, Plaintiffs' APA counts seek to bring a collective, programmatic challenge to a collection of individual actions—reductions-in-force, contract cancellations, grant cancellations—including actions yet to be taken when the Amended Complaint was filed. The wholesale nature of the challenge is confirmed by Plaintiffs' pleadings. The APA counts involve claimed statutory violations, but they do not mention a specific statute that forms the basis of the challenge itself. Rather, Plaintiffs allege at the highest level of generality that Defendants lack the "constitutional or statutory authority, as the President's agents, to dismantle the Department; wind down its statutorily mandated programs and activities; or withhold, terminate, or otherwise interfere with funds appropriated to the Department for its programs and operations." Am. Compl. ¶ 165. But addressing that type of claim would require the Court to supervise all of the agency's activities and determine how the Department would accomplish each specific statutorily-mandated function—an even more extreme kind of supervisory claim than what was at issue in *Lujan* itself. But as the Court explained in *Norton*, the purpose of the APA's discrete agency action requirement is:

> to protect agencies from undue judicial interference with their lawful discretion, and to avoid judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve. If courts were empowered to enter general orders compelling compliance with broad statutory mandates, they would necessarily be empowered, as well, to determine whether compliance was achieved—which would mean that it would ultimately become the task of the supervising court, rather than the agency, to work out compliance with the broad

statutory mandate, injecting the judge into day-to-day agency management. . . . The prospect of pervasive oversight by federal courts over the manner and pace of agency compliance with such congressional directives is not contemplated by the APA.

542 U.S. at 66-67.

As this Court noted, "[b]road application of Plaintiffs' contract termination arguments, while perhaps sidestepping the above-described standing and Tucker Act concerns, raises 'the kind of programmatic challenge the APA disfavors' as well as issues of agency discretion." Mem. Op. at 36 (quoting *AERA*, 2025 WL 1665401, at *1).

In another case challenging an alleged "closure" of an agency, the D.C. Circuit noted that there were several actions taken by the agency to downsize – including RIFs and contract cancellations. *Nat'l Treasury Emps. Union v. Vought* ("*NTEU*"), --- F.4th ----, 2025 WL 2371608, at *7 (D.C. Cir. Aug. 15, 2025). The Plaintiffs there "could challenge many of these actions in court" and "[s]uch challenges would target specific agency action or inaction that is alleged to be unlawful and to harm specific individual plaintiffs." *Id.* But instead, like here, the plaintiffs "challenge[d] what they describe as a single, overarching decision to shut down the [agency]." *Id.* The D.C. Circuit held the "challenge is not viable" because it did not "challenge [a] discrete, final agency action." *Id.*

The APA "requires the plaintiff to target specific agency action that has caused him an injury." *Id.* at *8. But Plaintiffs here have not identified a specific agency action that has caused them injury. They have not challenged the failure to provide a specific service, which may be reviewable—but rather some inchoate set of actions that allegedly trickle down to potentially affect services Plaintiffs prefer. This would require the Court to superintend the Department, but the APA "does not permit the courts to superintend how an agency carries out its broad statutory

responsibilities." *Id.*; *see also id.* at \*10 ("the APA does not make federal courts 'roving commissions' assigned to pass on how well federal agencies are satisfying their statutory obligations" (citation omitted)). Indeed, many courts have found similar challenges to the Department's reorganization an impermissible programmatic attack. *See, e.g.*, *AERA*, 2025 WL 1665401, at \*1 (finding suit challenging IES RIFs and contract cancellations was a programmatic attack); *Ass'n for Educ. Fin. & Pol'y, Inc. v. McMahon*, --- F. Supp. 3d ----, 2025 WL 1568301, at \*2 (D.D.C. June 3, 2025) (same); *Ass'n for Educ. Fin. & Pol'y, Inc. v. McMahon*, No. 25-cv-999 (D.D.C. filed Apr. 4, 2025) (same).

Accordingly, the Plaintiffs' APA claims should be dismissed for failure to challenge a discrete agency action.

### E.     Closure-Related Claims Must Be Dismissed as Not Ripe (Counts I, III-V)

Counts I and III-V of the Plaintiffs' claims are not ripe for review. That is because the Department of Education is not closed. And it will not be closing without congressional action. The ripeness doctrine requires a reviewing court to evaluate "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 149 (1967), *abrogated by*, *Califano v. Sanders*, 430 U.S. 99 (1977). Usually, a plaintiff must demonstrate both prongs to obtain review. *See Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 535 (1st Cir. 1995).

The ripeness doctrine reflects both "Article III limitations on judicial power" and "prudential reasons for refusing to exercise jurisdiction." *Reno v. Cath. Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993). The ripeness doctrine "prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also . . . protect[s] the agencies from judicial interference until an administrative decision." *Abbott Lab'ys*, 387 U.S. at 148. Moreover, in making prong two determinations, courts consider

pragmatic issues that would arise from considering the agency action to be reviewable. *Fed. Trade Comm'n v. Standard Oil Co. of Cal.*, 449 U.S. 232, 242-43 (1980); *City of New York*, 913 F.3d at 432. A claim should be dismissed as unripe if the plaintiff has not yet suffered injury and any future impact "remains wholly speculative." *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 758 (4th Cir. 2013) (citation omitted).

As explained above, the Department has not (and will not, without an act of Congress) close, and the impacts to Plaintiffs are wholly speculative. As it stands, the exact scope of the reorganization is unclear, and judicial review "is likely to stand on a much surer footing in the context of a specific application." *Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 164 (1967 ).

Moreover, agency consideration remains ongoing, which means that "judicial intervention would inappropriately interfere with further administrative action." *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 733 (1998); *see also Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." (citation omitted)).  For example, the Department has reactivated certain contracts and rebid others to meet its statutory duties.

## III.    Plaintiffs Fail to State a Claim Upon Which Relief Can Be Granted.

### A.    Plaintiffs' Fail to State Constitutional Claims (Counts I-III, V)

Plaintiffs' constitutional claims are barred at the outset because they are purely statutory. In Count One, Plaintiffs allege that the President's Directive and the actions of the Secretary "to close the Department or dismantle any of its congressionally mandated functions" violates the Take Care Clause. Am. Compl. ¶ 153.

In Count Two, Plaintiffs allege that the Secretary's "unlawful impoundment of the Department's congressionally appropriated funds" runs afoul of the Appropriations and Spending Clauses. *Id.* ¶ 158.

In Count Three, Plaintiffs allege that the "directives set forth in the March 20 Executive Order, the prior directives from the President that it memorializes, and Secretary McMahon's actions to implement those directives" violates separation of powers. *Id.* ¶ 161.

Finally, in Count Five, Plaintiffs allege that Defendants act *ultra vires* because "the DEOA and statutes such as ESEA, IDEA, HEA, Perkins, and ESRA create clear and mandatory statutory duties for the Department and its subdivisions to execute, and Congress has consistently appropriated funds to enable the Department to fulfill those obligations." *Id.* ¶ 170.

These "constitutional" claims are nothing more than Plaintiffs' statutory objections dressed up in constitutional garb. But Plaintiffs cannot turn what is otherwise an amorphous statutory claim into a constitutional issue merely by alleging that Defendants' failure to comply with their statutory obligations (under the Department of Education Organization Act) constitute an unlawful abridgment of Congress's Article I powers, a spending clause violation, an abdication of the President's constitutional responsibilities under Article II, Section 3, or otherwise acting *ultra vires*. As the Supreme Court explained in *Dalton v. Specter*, permitting a party to assert a Constitutional claims like Plaintiffs' would "eviscerat[e]" the well-established "distinction between claims that an official exceeded his statutory authority, on the one hand, and claims that he acted in violation of the Constitution." 511 U.S. 462, 474 (1994). The Court in *Dalton* thus rejected the proposition "that whenever the President acts in excess of his statutory authority, he also violates the constitutional separation-of-powers doctrine." *Id*. at 471. Plaintiffs therefore cannot prevail on the merits of Counts I-III and V by equating putative statutory non-compliance with a constitutional infraction.

At any rate, because the Department of Education Organization Act does not foreclose Defendants' decision-making, *infra* Section II.H., Plaintiffs' Constitutional claims would lack

merit even if properly pled.  Indeed, Plaintiffs' decision to invoke non-statutory causes of action to raise these "*ultra vires*" claims means they must meet a heightened standard "confined to 'extreme'" errors. *See Fed. Express Corp. v. U.S. Dep't of Com.*, 39 F.4th 756, 763-64 (D.C. Cir. 2022) (citation omitted); *see also NTEU*, 2025 WL 2371608, at *20 (treating Constitutional claims based on failure to follow a statute as *ultra vires* claims, and applying the heightened standard). In this way, these claims are "Hail Mary pass[es]—and in court as in football, the attempt rarely succeeds." *Nyunt*, 589 F.3d at 449.

Plaintiffs' subjective views about how to best implement the statutes governing the Department do not serve as a basis for the Court to reorder those priorities itself. The Government Accountability Office ("GAO"), itself an entity within the Legislative Branch, has similarly approved of agencies "taking the steps it reasonably believes are necessary to implement a program efficiently and equitably, even if the result is that funds temporarily go unobligated." *In re James R. Jones, House of Representatives*, B-203057 L/M, 1981 WL 23385, at *4 (Comp. Gen. Sep. 15, 1981). Defendants' actions are directed toward determining how best to implement programs consistent with the President's policy objectives and underlying law, and therefore is not violative of separation of powers principles.

The implementation of such policy priorities is plainly within the purview of Defendants, acting on behalf of the President. In cases where the President must "exercise . . . Executive discretion," the duty "imposed on the President is in no just sense ministerial. It is purely executive and political." *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 499 (1866). Thus, "[a]n attempt on the part of the judicial department of the government to enforce the performance of such duties by the President might be justly characterized . . . as 'an absurd and excessive extravagance.'" *Id*. (citation omitted); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 577 (1992) (finding it improper

for courts "to assume a position of authority over" the President's duty to "take Care that the Laws be faithfully executed" (citations omitted)). To hold otherwise would itself upset the separation of powers by allowing judicial superintendence over the exercise of Executive power that the Clause commits to the President alone. *See Dalton*, 511 U.S. at 474-75 (judicial review of discretionary Presidential decisions "is not available"); *Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 114 (1948) (refusing to review President's decision that "embod[ied] Presidential discretion as to political matters beyond the competence of the courts to adjudicate").

Nor does the Take Care Clause provide a basis to review the actions of subordinate Executive Branch officials. The Clause speaks only to the President, not to his subordinates, and ensures that the President is principally responsible for the actions of the Executive Branch and directly accountable to the people through the political process. *See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 493 (2010); *id.* at 495-97; *see also Printz v. United States*, 521 U.S. 898, 922 (1997); *Morrison v. Olson*, 487 U.S. 654, 689-90 (1988); *Clinton v. Jones*, 520 U.S. 681, 712-13 (1997) (Breyer, J., concurring). A subordinate Executive officer cannot violate the President's duty to faithfully execute the laws. To the extent Plaintiffs seek to challenge the actions of other Federal Defendants, they cannot do so through the Take Care Clause, but must do so, if at all, through the APA, which in this case presents separate insurmountable obstacles for Plaintiffs.

Moreover, to the extent Plaintiffs take issue with changes to the Office for Civil Rights, the Supreme Court has long recognized that agencies can permissibly decide what enforcement and supervision actions to take, if any, consistent with the statutory duties imposed on the agency by Congress. *See Heckler v. Chaney*, 470 U.S. 821, 831-832 (1985) (agency enforcement discretion generally not subject to judicial review). Judicial deference to Defendant's decision-making about the priorities of the Department is especially warranted with respect to claims directed at the OCR,

24

as "the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case." *United States v. Nixon*, 418 U.S. 683, 693 (1974); *see also Heckler*, 470 U.S. at 832. As the Court explained in *Heckler*, agencies are "far better equipped" to evaluate "the many variables involved in the proper ordering of its priorities" than are the courts. 470 U.S. at 831-32.

Plaintiffs have no cognizable interest in simply policing the Department's compliance with the Constitution. Their ability to bring this case with respect to contracts and grants depends on their claim that specific entities—the non-party grantees—have a legal entitlement to the disputed funds. Yet, neither the Take Care clause, nor the Spending Clause, nor the Constitution's separation of powers remotely confers on these entities a right to federal funds. Rather, "it is the operative grant agreements which entitle any particular [recipient] to receive federal funds." *Sustainability Inst.*, 2025 WL 1587100, at *2. Indeed, "no cause of action would exist" without the grant and contract agreements. *Up State Fed. Credit Union*, 198 F.3d at 377 (citation omitted). That Plaintiffs' claims could not "exist[] prior to and apart from rights created under the [agreements]" precludes district court jurisdiction. *Spectrum Leasing Corp.*, 764 F.2d at 894.

Plaintiffs Spending and Appropriation Clause arguments also fail because Congress merely appropriated funds for broad purposes, including for the expenses of Department operations, and the further delineation of broad purposes does not require that the Government provide specific amount funds to particular contracts, particular grants or employee salaries. *See infra* at III.B. How those funds could best be distributed is not a judicially reviewable question, but instead is left to agency discretion.

With respect to the formula grants, even taking Plaintiffs allegations as true, Defendants are not withholding the formula grants but rather reviewing them. Indeed, Plaintiffs have provided no evidence that Defendants intend to withhold these formula grants.

In sum, this Court is bound to review Plaintiffs' Constitutional claims as *ultra vires* claims – that is, they must allege "'extreme' agency error." *Fed. Express Corp.*, 39 F.4th at 763-64 (citation omitted); *see also NTEU*, 2025 WL 2371608, at *8. Because Plaintiffs fail to allege extreme error on behalf of the Defendants, their claims should be dismissed.

### B.   Plaintiffs APA Claims Should be Dismissed Because the Department's Administrative Functions Are Committed to Agency Discretion (Count IV)

Courts lack the power to "dictat[e] to the agency the methods[] [and] procedures" it uses to complete its statutory obligations. *See Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 545 (1978) (quoting *Fed. Power Comm'n v. Transcon. Gas Pipe Line Corp.*, 423 U.S. 326, 333 (1976)). RIFs incorporate the type of actions that are "committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *Markland v. Off. of Pers. Mgmt.*, 140 F.3d 1031, 1033 (Fed. Cir. 1998) ("We accord an agency wide discretion in conducting a [RIF]; absent a clear abuse of that discretion, a substantial departure from applicable procedures, a misconstruction of governing statutes, or the like, we do not upset a final agency decision.") (citation omitted). "In determining whether a matter has been committed solely to agency discretion, [courts] consider both the nature of the administration action at issue and the language and structure of the statute that supplies the applicable legal standards for reviewing that action." *Drake v. FAA*, 291 F.3d 59, 70 (D.C. Cir. 2002). Here, each factor shows that Defendants' managerial decisions are committed to agency discretion.

First, staffing decisions fit neatly among those "categories of administrative decisions that courts traditionally have regarded as 'committed to agency discretion.'" *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993)) (citation omitted). After all, the very point of the RIFs is to improve efficiency, which allows the Department to "meet its statutory responsibilities in what [the new administration] sees as the most effective or desirable way." *Id.* at 192. Similarly, "an agency's

decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." *Heckler*, 470 U.S. at 831. The RIFs reflect the Administration's effort to realign the Department to provide better service to the American people. "The agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities." *Id*. at 831-32.

Second, Plaintiffs cannot point to a particular statute limiting the agency's inherent discretion to reduce headcount. Again, agencies generally have broad discretion to determine how to implement a statute. *See Vt. Yankee*, 435 U.S. at 543.

Any challenge to non-formula funding decisions by the Department are committed to the agency's discretion by law. *See* 5 U.S.C. § 701(a)(2). In appropriating funds for the Department, Congress gave the agency broad discretion to decide when and how to spend funds consistent with the various purposes specified in the appropriations laws.

With respect to the contracts cancelled within IES, in 2024, Congress appropriated funds "[f]or necessary expenses for the Institute of Education Sciences." Further Consolidated Appropriations Act, 2024, Pub. L. No. 118-47, 138 Stat. 460, 690; S. Rep. No. 118-84, at 247 (2023) (incorporated into statute by Pub. L. No. 118-47 § 4 and Explanatory Statement, 170 Cong. Rec. H1501, H1886 (daily ed. Mar. 22, 2024)). Congress continued funding at this level for 2025. Full-Year Continuing Appropriations and Extensions Act, 2025, Pub. L. No. 119-4, § 1101(a)(8), 139 Stat. 9, 11.

Those appropriations provide no standards "against which to judge the agency's exercise of discretion" in making the many choices the agency must make concerning how to spend those funds. *See Heckler*, 470 U.S. at 830. The agency has unreviewable discretion to make choices on how the appropriations are spent. *Lincoln*, 508 U.S. at 192 ("[t]he allocation of funds from a lump-

sum appropriation is another administrative decision traditionally regarded as committed to agency discretion"). The Department's decisions about how best to spend appropriated funds "requires 'a complicated balancing of a number of factors which are peculiarly within its expertise,'" and the "agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities." *Id.* at 193 (quoting *Heckler*, 470 U.S. at 831-32).

With respect to the competitive grants, the Secretary is invested with broad discretion as to whom the grants are delivered. 34 C.F.R. § 75.1(b) ("A discretionary grant program is one that permits the Secretary to use discretionary judgment in selecting applications for funding").

In sum, the actions challenged by Plaintiffs fall neatly within those types that are entrusted to agency discretion by law, and Plaintiffs' APA claims should be dismissed.

### C.    Plaintiffs' APA Claims Should be Dismissed Because There Are Adequate Alternative Remedies Available (Count IV)

Review under the APA is available only where "there is no other adequate remedy in a court." 5 U.S.C. § 704. The requirement that a plaintiff have "no other adequate remedy in a court," *id*., reflects that "Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action," *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988). As already described above, this is, in essence, a contract action and an employment action, and there are CSRA, FSL-MRS and Tucker Act remedies available.

### CONCLUSION

For the foregoing reasons, the Court should dismiss this lawsuit.

DATED: September 18, 2025            Respectfully submitted,

                                     BRETT A. SHUMATE
                                     Assistant Attorney General

BRAD P. ROSENBERG
Special Counsel

*/s/ Michael Bruns*____
Michael Bruns
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
michael.bruns@usdoj.gov

*Counsel for Defendantss*